## BUCHER *v.* CHESHIRE RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MASSACHUSETTS.

No. 132.   Argued January 11, 1888. — Decided March 19, 1888.

The plaintiff sued the defendants in a state court and recovered judgment.
The highest appellate court of the State, reviewing the case decided the
points of law involved in it against the plaintiff, set aside the judgment
for error in the ruling of the court below, and sent the case back for a
new trial. The plaintiff then became nonsuit, and brought the present
suit in the Circuit Court of the United States on the same cause of action.
*Held*, that he was not estopped.

The provision in Rev. Stat. § 721 that "the laws of the several States, except
where the Constitution, treaties, or statutes of the United States other-
wise require or provide, shall be regarded as rules of decision in trials at
common law in the courts of the United States in cases where they apply"
is not applicable to proceedings in equity, or in admiralty, or to criminal
offences against the United States.

The courts of the United States adopt and follow the decisions of the high-
est court of a State in questions which concern merely the constitution
or laws of that State; also where a course of those decisions, whether
founded on statutes or not, have become rules of property within the
State; also in regard to rules of evidence in actions at law; and also in
reference to the common law of the State, and its laws and customs of a
local character, when established by repeated decisions.

The Supreme Judicial Court of Massachusetts having, in a cause between
the same parties litigating in this action, arising out of the transaction
herein litigated, and on the facts herein established, *held;* (1) that the
plaintiff when injured by the negligence of the defendants' servants was
not travelling "for necessity or charity" within the meaning of those
terms as used in the General Statutes of Massachusetts, c. 84, § 2; (2)
that the provision in those statutes, c. 84, § 2, that whoever travels on

the Lord's Day except for necessity or charity shall be punished by a fine not exceeding ten dollars is a bar to recovery in an action against a railroad company by a person injured through the negligence of its servants while travelling on its railroad on Sunday, not for necessity or charity; and (3) that the act of the Massachusetts legislature of May 15, 1877, that this prohibition against travelling on the Lord's Day shall not constitute a defence to an action against a common carrier of passengers for any tort or injury suffered by the person so travelling, does not apply to a case happening before the passage of the act; *Held*, that these adjudications are sustained by a long line of numerous decisions, which establish a local rule of law within the State of Massachusetts, binding upon this court, though not meeting its approval.

THIS action was brought to recover damages for personal injuries inflicted upon the plaintiff by reason of the joint tort of the defendants, while he was travelling in the State of Massachusetts, as a passenger on a train operated by one of them. The defendants' plea was a general denial, and a further allegation "that if the plaintiff was travelling, as alleged by him, and while travelling was injured, he was travelling on a Sunday or Lord's Day, and not from necessity or charity, and in violation of said law of said Commonwealth of Massachusetts, and that if he suffered any injury it arose from and happened in consequence of his violation of said law."

There was a verdict for defendants, under instructions from the court, and a judgment on the verdict, to review which this writ of error was sued out.

Before the commencement of this action, the plaintiff had sued the defendants on the same cause of action in a state court of Massachusetts. He obtained a judgment against them in the court below, which was reversed by the Supreme Judicial Court of the Commonwealth, *Bucher* v. *Fitchburg Railroad*, 131 Mass. 156, and the case remanded for a new trial. The plaintiff thereupon became nonsuit, and commenced this action in the Circuit Court of the United States. The case as presented in this court, is shown in the bill of exceptions, allowed by the court below, as follows:

"This was an action of tort for damages alleged by plaintiff to have been sustained by him through the negligence of the defendants while he was a passenger in the cars of said Fitch-

burg Railroad Company. The writ, declaration, and all plead ings on file are referred to as a part of this bill of exceptions.

"Defendants are both common carriers of freight and pas-· sengers, the Fitchburg Railroad Company running trains from North Adams, Mass., to Boston, and the Cheshire Railroad Company from Fitchburg, Mass., to Keene, N. H., and thence to Bellows Falls, Vt., both companies running on the same track from Fitchburg to Ashburnham, Mass. At the trial be- fore the jury the plaintiff, a resident and citizen of Philadel- phia, Penn., testified that at the time of the accident he was the managing agent of a fire insurance company, attending to their business in New England; that on Saturday, August 5, 1876, being in Rutland, Vt., he took passage and started on the early morning railroad train of the Bennington & Rutland railroad in course and *en route* for Boston, said train connect- ing with said Fitchburg railroad train at North Adams; that the train was due and he expected and intended to reach Bos- ton at 10.30 that evening; that this train reached North Ben- nington, Vt., a half hour too late to make connections for Boston with the Troy & Boston railroad train which connected with the state railroad run by the Fitchburg railroad at North Adams; that he then inquired of the ticket agent at that sta- tion what chance he had to get to Boston that night; that the ticket agent glanced along the time-table on the wall and said: "You can get to Boston at 7.22 in the morning by tak- ing the express freight at North Adams," and advised him to drive right over to Hoosac, a distance of about eight miles; that plaintiff took a carriage and did so, and there took a mixed train, which carried him to North Adams, where he arrived about eleven o'clock that evening, and was there told by the conductor that the express freight started in about twenty minutes, but he found that this train also was delayed; he waited around the station until the express freight backed up and then got aboard, going into the caboose car with the consent of the conductor, starting from North Adams at about one or two o'clock Sunday morning; that there were other passengers in the car; that he had a ticket, which he had bought the previous week, entitling him to be carried over the

Fitchburg Railroad Company's line from Miller's Falls to Boston, and expected and was ready to pay his fare from North Adams to that place, the office at North Adams being closed so that he could not buy a ticket ; that the train reached Ashburnham at about eight o'clock in the morning, and about a half hour afterward, whilst rounding a sharp curve about six miles from Fitchburg, collided with a train operated by the said Cheshire Railroad Company which was standing still upon the said track used in common by both defendants from Ashburnham to Fitchburg; that the car in which plaintiff was riding was telescoped, and he was seriously injured in his side and about his head, having his arm and the bones of his neck fractured, occasioning a permanent disability, for which he claimed damages to the amount of ten thousand (10,000) dollars."

The plaintiff also testified, in answer to questions put to him by counsel on direct and cross-examination, as follows, viz:

" (By MR. CLARK, pl'ff's counsel :) Q. When you came down to Bennington and missed the Boston train why did you not stay over there ? A. I wanted to reach Boston for a special reason. Q. What was that ? A. I had heard from my sister, who was in Minnesota, stopping with an uncle, where I sent her for her health a year previous to that. I had a letter from her that she was very ill, and expressed in her letter that she preferred to be brought home to die. She had been feeble for a number of years. Q. Were you supporting her at this time ? A. I was; yes. Q. Had you made any reply to the letter she sent you ? A. I wrote her back that if she could prevail on my cousin to bring her as far as Chicago I would meet her there and bring her the rest of the way; or if he preferred to go clear through to Philadelphia I would be very glad, because my business was such that it was disadvantageous to leave my field any longer than it was necessary. Q. Had you informed your sister where she could reach you by mail ? A. I had, and when. Q. Where was it ? A. That I would be in Boston on the first Saturday of August, and whatever was her wish I would carry out — either go to Chicago or through to St. Paul if it were necessary. Q. That is, would

you go through to St. Paul after leaving Rutland in the morning? Do you mean you would have gone there if this letter had not stopped you in Boston? A. It is equivalent to that, yes. Q. What time did you expect this letter from your sister to reach Boston — to reach you in Boston? A. I expected it to be there on the Saturday I was going. Q. Then, as I understand, if this man could not accompany her East you were going on after her and bring her yourself? A. I would have gone on Saturday night. Q. Was that letter brought to you at any time? A. It came to me whilst I lay at the Roolstone House, Fitchburg, on the Tuesday after the accident. Q. Brought up by any person? A. By Mr. Merrifield, the general agent of my company residing in Boston.

"(By MR. SOHIER, defendants' counsel:) Q. You say you expected a letter from her in Boston? A. Yes, sir. Q. What is the date of the letter you wrote her? A. It may have been about the 15th of the month or it may have been later than that date. I am rather inclined to the opinion that it was the 20th of the month. Q. The month of July? A. The 20th of July. Q. You say you wrote your sister. You have been examined before in this case in the Massachusetts Supreme Court? A. Yes, sir. Q. Did not you say before the letter was received about the 15th of July? A. Yes, sir; and I say so now; about the 15th of July, but I think the probabilities are that it was the 20th or 21st, the reasonable probabilities. Q. When did you receive the letter from her? A. About that time. Q. A short time before you answered it? A. Yes, sir. Q. You answered it the 15th? A. 15th to the 20th. Q. Have you had any occasion or reason why you should change any part of your previous testimony? A. No, sir; I don't, except to make the correction in that one important particular. Q. What is that? A. That I expected that letter that Saturday in Boston, at the office of the general agent. I as fully expected it as yesterday I expected to be on the witness stand to-day. Q. You expected to find a letter from your sister, then? What made you expect to find it then more than any other Saturday? A. Because I had notified her where to address me, and the time. Q. When did you

give her that notice? A. I gave her that notice perhaps as late as July 22d. Q. Is the letter you now allude to the same letter which you say was about the 15th? A. It is the same letter, for I think it was likely the 20th or 22d. Q. Where were you when you wrote that letter? A. I think that letter was written from Concord, to the best of my recollection — Concord, N. H. To the best of my recollection, I was at Concord the 21st, 22d, 23d, and 24th of July. Q. Are you testifying from memoranda you made? A. No; except in trying to rehearse my field of operations to see where I was and ascertain as nearly as I can where I received the letter from my sister.

"(By Mr. Clark:) Q. Something has been said about your testifying, at the last trial of the case before the Massachusetts Supreme Court, that you wrote the letter to your sister about the 15th of July. When was the time of writing that letter first called to your attention? A. When I was asked the question on the witness stand before said court. Q. When you testified at the last trial before said court? A. Yes, sir. Q. Was that the first time you had ever had your attention called to it? A. That was the first time. Q. You then stated about the 15th of July? A. Yes, sir. Q. How long after the accident was it when you testified — how many years? A. Nearly three years. Q. Had your attention ever been called in any way to the date of that letter until you were testifying? A. No; it had not. Q. Well, since then have you refreshed your recollection in any way as to the time when you wrote it? A. The best I could within the past few days. Q. How? A. By thinking over my routes of operations when out in the field of labor taking care of the interests of my company, where I was likely to have been on such a week and at such a week, and when I was likely to have received this letter and when I was likely to have answered it. Q. On what day did you expect this letter to arrive in Boston? A. Which letter do you now refer to? Q. The answer which was to come back from your sister. Did you expect that the answer from your sister would arrive before the 5th day of August, upon Saturday? A. I directed her to write me at Bos-

ton by Saturday, the first Saturday of August, that I would be in Boston at that time, and would complete arrangements for bringing her home or sending for her. Q. Now if you will answer the question, whether you expected the letter to arrive earlier than Saturday? A. Not earlier than Saturday.

"(By MR. SOHIER:) Q. Your sister was in Minnesota. Where was she — in St. Paul? A. In St. Paul. Q. Where she could be telegraphed to? A. Yes, sir. Q. Where she could telegraph you if she knew where you were? A. Yes, sir."

The conductor of defendant, Fitchburg Railroad Co.'s train, called by plaintiff, testified that his train was some two hours late in leaving North Adams; that he was accustomed and allowed by the Fitchburg Railroad Co. to carry passengers on that train, and he took fares, which he turned over to the company; that he had not asked plaintiff for his fare or ticket, as he had been asleep; that the collision occurred between stations, and the trainmen in charge of the train of the Cheshire Railroad Co., defendant, with which his train collided, neglected when they brought their train to a standstill to send back or set any or proper danger signals to warn him of their so being on the track ahead. No fault was ascribed to plaintiff except that he was travelling on Sunday.

Plaintiff contended and introduced evidence tending to show that said collision occurred through the joint negligence of defendants and that the nature and extent of the injuries received by him and caused by same were of a serious and permanent character, occasioning damages amounting to a sum exceeding $5000, which he claimed a right to recover upon the evidence.

At the conclusion of the testimony offered by plaintiff defendants' counsel, not offering any evidence, cited and read to the court the case of this plaintiff against defendant, the *Fitchburg Railroad Co.* alone, reported in Massachusetts Reports, vol. 131, p. 156 (which it was admitted was brought to recover damages for the accident now made the subject of this suit and in which the plaintiff became nonsuit voluntarily after a new trial was granted), and contended that under the law of Massachusetts relied on in its answer the plaintiff could not recover;

that there was no evidence which would justify the jury in finding that he was travelling from necessity or charity, and that he could not maintain the action.

Plaintiff's counsel contended and claimed and asked the court to rule that the mere fact that he was travelling on the Sabbath or Lord's Day was not of itself alone a defence to the action or such as to prevent a recovery independently of the question whether he was travelling from necessity or charity or not; that the statutes of the State of Massachusetts on that subject did not apply and constituted no defence under the law and the decisions of the Federal courts.

His honor the presiding judge ruled as follows, viz.:

"In respect to the motion for a nonsuit the defendant bases his motion upon three grounds:

"First, that this case has been before the Supreme Court of Massachusetts, and the Supreme Court, upon the same state of facts arising upon the construction of a local statute, have decided that the plaintiff cannot recover by reason of a violation of the law with respect to Sunday; secondly, that the United States courts are bound to follow the construction which the Supreme Court of a State puts upon a local or state statute; and, thirdly, that the case presented by the plaintiff is substantially the same case which was presented before the state court. It seems to me that the law is well settled that the United States courts are bound to follow the decisions of the Supreme Court of a State upon the construction of a local statute, and that this case comes within that principle or doctrine, and that therefore the only question which arises here is whether the plaintiff does present a different case from that which was decided by the Supreme Court of the State. Of course this identical case was before the Supreme Court — the very case which we have here — and the only point is whether the facts which the plaintiff now presents are different from the facts which were before the state court. It does not seem to me that there is any material change in the testimony. I think that the testimony is substantially the same as was presented before the state court; that the changes which the plaintiff makes are immaterial, and do not affect the principles

which were laid down by the state court — that is, admitting the testimony to be true as it goes in here, the principles laid down by the state court in construing the Sunday law, so called, would apply to this case.

"Now the state court decided that this was not an act of charity or necessity on the part of the plaintiff; that he was not engaged in an errand of charity or of necessity. It seems that he was to receive a letter upon his arrival in Boston which was to determine whether he should go to the West for the relief of his sister. He was injured on coming to Boston before his arrival here — that is, in one sense, the act of necessity or charity had not begun. It was not determined whether he should be obliged to go upon this errand until he received this letter. The letter might be of such purport as not to call for him to go for the relief of his sister, and there-fore the Supreme Court say that the act of ascertaining whether a person shall do a charitable act is not an act of charity, and so far as the necessity of the act is concerned the Supreme Court say that it must be a necessity which cannot be avoided; it must not be a necessity which arises from convenience. In other words, I cannot perform my secular duties during the week to the neglect of a necessary act, and then wait until Sunday to perform an act and call it a necessary act. I cannot repair a water-wheel upon Sunday, during the time that the mill may have been stopped, although the stoppage of the mill upon a week day might throw a thousand men out of employment and cause me very material damage. So here the plaintiff in this case received a communication from his sister about her illness the second week in July. Now whether he directed her to immediately answer the letter which he sent in reply to that communication, which was the condition of the evidence in the state court, or whether he directed her to an-swer the letter upon Saturday, August 6th, when he was to arrive here, and not, if you please, to have the letter arrive sooner, cannot make any difference in the principle of the case, because from the second week in July up to the 6th of August he was engaged in his secular avocations, and therefore the act was not such an act of necessity as could not be helped, but he

postponed his necessary act in order to engage for some time in his secular avocations. Therefore, it is very clear to my mind that upon the slight change in the testimony which is produced here the plaintiff still comes within the rulings of the supreme court of this State.

"Now, I am not here to decide the question whether the court approves of this Sunday law or not. I am not here to decide the question whether, if the case came up in the first place before this court, I should not allow this question, whether it was an act of necessity or charity, to go to the jury. In my present position I am debarred from this, and the only question for me to decide is whether the case presented here is substantially the same case as that presented in the supreme court and whether the principles laid down there in this identical case apply to the slightly different state of facts which is presented here. That is the only question. I am of opinion that it is substantially the same case, and therefore that I should abide by the decision of the supreme court of the State. As it is not customary for the United States courts to grant a nonsuit, perhaps the better way would be to direct a verdict for the defendant."

MR. CLARK: "Will your honor pardon me for submitting one more point: Whether or no, as the evidence now stands, we are entitled to go to the jury upon the question whether this letter, in the ordinary course of the mail, would not have arrived upon the day which he says he expected it to come. We base it on this state of the evidence — that the letter was written to his sister about the 22d of July. The evidence shows that it would take four or five days for the letter to go out there and then four or five days for a letter to come back, and under the circumstances and as the evidence puts it his sister was to ascertain whether a gentleman would accompany her as far as Chicago or perhaps as far as her home in Philadelphia, or whether, if he found himself unable to come with her, she was in a condition to be moved; and, further, whether this man was to go on for her. Now, it seems to us that there is a question which the jury are entitled to pass upon: Whether the letter, under all the circumstances, would have

arrived in Boston earlier than Saturday, the 5th day of August, when he says he expected it to come — that is, that the facts which appear in the record of the lower court are not the same facts that are shown here, and that there is something for the jury to pass upon in that particular, because, as your honor sees, if it took four or five days for the letter to go out there and four or five days for the reply to come back, that would consume ten days, and from the 22d of July to the 5th of August it would leave only two or three days; and the question is, Whether or no Mr. Bucher was entitled to believe that she might take those two or three days for the purpose of ascertaining whether this gentleman would come with her or if she was in a condition to be moved and to make up her mind whether he should come for her at this time."

COLT, J.: "I hardly think that could make any difference. It seems to me that he, having knowledge that his sister was ill the second week in July, ought then immediately, under the decision and ruling of the supreme court of the State, to have communicated with her, and not to have delayed from the second week in July until the 22d or the 26th — that is, from the time that he received this letter for several weeks he was engaged in his secular business."

MR. CLARK: "I think your honor has misunderstood what I said was the testimony now. The fact of his sister's illness did not come to his knowledge until the 22d of July. The first knowledge that he had of it, as he says and as the evidence stands, was from the letter that was forwarded to him at Concord, New Hampshire, from the main office. That he fixes as the 22d of July, so that he did not have knowledge of his sister's illness on the 15th; but as soon as he ascertained, on the 22d, that his sister was ill he immediately replied to her letter, as the evidence now stands."

MR. WADLEIGH: "Your honor will remember that he fixes the time of his being at Concord from the 20th to the 24th. This letter was forwarded to him at Concord, and he received it there and answered it as soon as he received it."

COLT, J.: "I cannot but think that, upon the testimony presented, this case comes within the principles laid down. The motion is granted."

OCTOBER TERM, 1887.

The presiding judge thereupon directed the jury to return a verdict for defendants, and plaintiff then duly excepted to all said rulings and refusals to rule, directions, and doings of the presiding judge, and said exceptions were duly allowed. The jury returned a verdict for defendants, as directed by the presiding judge, as above stated.

The statute of Massachusetts referred to in the defendants' plea, as in force at that time, is to be found in the General Statutes of the State, c. 84, § 2, and is as follows: "Whoever travels on the Lord's day, except for necessity or charity, shall be punished by a fine not exceeding ten dollars."

After the accident happened, and before the suit in the state court was brought, the legislature of Massachusetts enacted the following statute:

"The provisions of § 2 of c. 84, Gen. St., prohibiting travelling on the Lord's day, shall not constitute a defence to an action against a common carrier of passengers for any tort or injury suffered by a person so travelling."

This last-named statute was held by the state court not to be retroactive, and not to affect this case.

*Mr. A. A. Ranney* for plaintiff in error.

I. The court below erred in regarding this as a question of local law, in which the Federal court was concluded by the decision of the state courts.

The court below followed the doctrine of law as held by the Supreme Court of the State of Massachusetts, which this court will find stated in *Stanton* v. *Metropolitan Railroad*, 14 Allen, 485, thus: "Being engaged in a violation of law, without which he would not have received the injury sued for, the plaintiff cannot obtain redress in a court of justice." He seems, however, to have gone further than this, and treated the ruling of the state court in *Bucher* v. *Fitchburg Railroad Co.*, 131 Mass. 156, — that the evidence reported therein was not sufficient to warrant a verdict for the plaintiff, and that a new trial must be had before a jury, leave for which was granted, — as a conclusive adjudication on the issue of fact presented again

to a jury in the Circuit Court, rather than as a legal authority. only. The adjudication in the state court was not pleaded in bar, and would not have availed as such, if it had been, as there was only a voluntary nonsuit in the case.

The only effect which can properly be given to the decisions of the state court in this case is as an authority in matter of law, except that possibly the construction put upon the statute of May 15, 1877, as to its not being retroactive, may be binding on this court; and we respectfully submit that the court below erred in this respect. He disregarded a general principle and rule of law, as adjudicated in the Federal courts, and by other high authorities in other States, and followed the doctrine as held in the State of Massachusetts, treating the same as binding upon him, although his own opinion might be otherwise.

In the case of *Sawyer* v. *Oakman*, 1 Lowell, 134, affirmed 7 Blatchford, 290, the court held itself bound by the doctrine of this court as against the decisions of the courts of Massachusetts. The court says: "Now, to the extent of holding that work done in contravention of the statute is illegal, it may be that the local law should govern, but the statute itself is silent concerning the legal consequences of doing such an act, excepting to the extent of the penalty directly imposed. The effect which it may have on the wrong-doer's standing, as regards third persons, is no part of the construction of the statute, but the application of a general principle of law."

It is also held, in *Hough* v. *Railway Co.*, 100 U. S. 214, that where a case depends upon principles of general law, and not upon statute regulations, this court is not bound by the decisions of the state courts. That was a railroad case of tort. See also *Myrick* v. *Michigan Cent. Railroad*, 107 U. S. 102; *Railroad Co.* v. *National Bank*, 102 U. S. 14; *Chicago City* v. *Robbins*, 2 Black, 418; *Oates* v. *National Bank*, 100 U. S. 239; *Branch* v. *Macon & Brunswick Railroad*, 2 Woods, 385.

In *Burgess* v. *Seligman*, 107 U. S. 20, 34, this court says: "As the very object of giving to national courts jurisdiction to administer the laws of the States in controversies between citizens of different States, was to institute independent tribu-

nals, which it might be supposed would be unaffected by local prejudices and sectional views, it would be a dereliction of their duty not to exercise an independent judgment in cases not foreclosed by previous adjudication."

It may be regarded as an established rule in this court that, where private rights are to be determined by the application of common-law rules alone, the Federal courts are not bound by the decisions of the state courts.

There is a very good reason why this court should have a doctrine of its own in cases like the one at bar.

Lines of railway are long and continuous, extending through different States, and citizens of different States travel over them. There ought to be a uniform rule of law to be administered in Federal courts on such a subject.

If right in this position, we then submit that the doctrine laid down by this court in *Phil. Wilmington &c. Railroad Co.* v. *Towboat Co.*, 23 How. 209, and followed by Lowell, J., in case of *Sawyer* v. *Oakman*, 1 Lowell, 134 (approved by Woodruff, J.), is the only sensible and sound view to take of the law.

We cite also, in support of this contention, the following cases, namely: *Sutton* v. *Wauwatosa*, 29 Wis. 21; *Schmid* v. *Humphrey*, 48 Iowa, 652; *Carroll* v. *Staten Island Railroad*, 58 N. Y. 126; *Mohney* v. *Cook*, 26 Penn. St. 342; *S. C.* 67 Am. Dec. 419; *Merritt* v. *Earle*, 29 N. Y. 115; *S. C.* 86 Am. Dec. 292; *Johnson* v. *Irasburgh*, 47 Vt. 28; Bigelow on Torts, 309; 2 Thompson on Negligence, 1094; *Strickler* v. *Hough*, 1 Pittsb. (Penn.) 237; *Moulton* v. *Sanford*, 51 Maine, 127; *Baker* v. *Portland*, 58 Maine, 199; *Norris* v. *Litchfield*, 35 N. H. 271; *S. C.* 69 Am. Dec. 546; *Corey* v. *Bath*, 35 N. H. 530; *Landers* v. *Staten Island Railroad*, 13 Abb. Pr. (N. S.) 339; Wharton on Neg., § 321; Cooley on Torts, 156, 157.

The trouble with the doctrine, as held by the Supreme Court of Massachusetts, is this: It has applied its doctrine to cases of highway and railway accidents alike, disregarding the distinction made by the Supreme Court of Vermont in *Johnson* v. *Irasburgh*, 47 Vt. 28. It makes that an efficient cause of the injury which is not such. It treats travelling on Sunday as

contributing necessarily to the result, when it is not the natural or usual result of travelling on Sunday that damages should follow.    It is a species of judicial outlawry; it ignores the analogies of the law and the principles of humanity; it impinges upon a well-settled rule of general law, which the same court has itself recognized and enforced in other cases, to wit: *Welch* v. *Wesson*, 6 Gray, 505; *White* v. *Lang*, 128 Mass. 598; *Steele* v. *Burkhardt*, 104 Mass. 59.

The doctrine of the court of Massachusetts is generally regarded as strained, unwarranted, and unjust: *Wallace* v. *Navigation Co.*, 134 Mass. 65, 95; *Commonwealth* v. *Louisville & Nashville Railroad*, 80 Kentucky, 291; *Platz* v. *Cohoes*, 89 N. Y. 219; *Baldwin* v. *Barney*, 12 R. I. 392; *Bayley* v. *New York &c.* 3 Hill, (N. Y.), 531; *Kerwhaker* v. *Railroad*, 3 Ohio St. 172; *S. C.* 62 Am. Dec. 246; *Opsahl* v. *Judd*, 30 Minnesota, 126; *Jacobus* v. *St. Paul &c. Railway*, 20 Minnesota, 125; *Wood* v. *Erie Railway*, 72 N. Y. 196.

The mere fact that the plaintiff on the one hand, or the defendant on the other, was engaged in violating the law in a given particular at the time of the happening of the accident will not bar the right of action of the former, nor make the latter liable to pay damages, unless such violation was an efficient cause of the injury.

We insert copious extracts from the opinions of the court in some of the cases cited, showing that this general rule of tort governs the case at bar.

Mr. Justice Grier, in *Philadelphia, Wilmington &c. Railroad* v. *Towboat Co.*, 23 How. at page 207, says: " The law relating to the observance of Sunday defines a duty of a citizen to the State, and to the State only.    For a breach of that duty, he is liable to the fine or penalty imposed by the statute and nothing more.    Courts of justice have no power to add to this penalty the loss of a ship by the tortious conduct of another, against whom the owner has committed no offence."

The court say, in *Carroll* v. *Staten Island Railroad Co.*, 58 N. Y. 126: " The defence is purely extraneous. . . . The negligence of the defendant was as wrongful on Sunday as on any other day, and was as likely to be followed by injurious or fatal

consequences. The plaintiff's unlawful act did not in any sense contribute to the explosion. . . . To hold the carrier exempt from liability because the plaintiff was violating the Sunday statute would be creating a species of judicial outlawry, to shield a wrong-doer from a just responsibility for his wrongful act." p. 136.

Dixon, C. J., in *Sutton* v. *Wauwatosa*, 29 Wis. 21, demonstrates that the violation of the law is an independent and disconnected act, and not a concurring or contributing cause within the rule of common law, and concludes: "Connection, therefore, merely in point of time, between the unlawful act or fault of the plaintiff, and the wrong or omission of defendant, the same being in other respects disconnected and independent acts or events, does not suffice to establish contributory negligence, or to defeat the action on that ground. As observed in *Mohney* v. *Cook*, such connection, if looked upon as in any sense a cause, whether sacred and mysterious or otherwise, clearly falls under the rule — *Causa proxima non remota spectatur.*" p. 29.

In *Baker* v. *Portland*, 58 Maine, 199, the court say: "The fact that a party plaintiff in an action of this description was at the time of the injury passing another wayfarer on the wrong side of the street, or without giving him half of the road, or that he was travelling on runners without bells, in contravention of the statute (see *Moulton* v. *Sanford*, 51 Maine, 134, by Appleton, C. J.), or that he was smoking a cigar in the streets, in violation of a municipal ordinance, while it might subject the offender to a penalty, will not excuse the town for a neglect to make its ways safe and convenient for travellers, if the commission of the plaintiff's offence did not in any degree contribute to produce the injury of which he complains." p. 205.

In *Schmid* v. *Humphrey*, 48 Iowa, 652, the court say: "The fact that the plaintiff was at the place at the time he was injured did not directly contribute thereto. As well might it be said, if he had never come to Iowa, or been born, he would not have been injured, and that, therefore, by reason of such facts, he contributed to the injury." p. 654.

In *Johnson* v. *Irasburgh*, 47 Vt. 28, the court agree with

the doctrine of the cases cited above, to the extent that the unlawful act of travelling on Sunday does not prevent a recovery because it was in any sense contributory negligence, or because it was simply an illegal act. They say: "Whether he is lawfully or unlawfully there, when there, the same causes and forces produce the accident in one case as in the other; and the fact that the injured one is present unlawfully is not a factor which contributes to the happening of the accident." p. 34.

In *Strickler* v. *Hough*, 1 Pitts. (Penn.) 236, the court say: "The injury arose from 'the sole act of the defendant, an obstruction to the navigation unlawful at all times and seasons, and unmitigated by any fault in the plaintiff uniting in the production of the injury. Not that the plaintiff was without fault in his breach of the Sabbath, but that he was in none which united in the causation of the injury. It is true, if the plaintiff had not navigated the stream, the injury would not have happened; but it happened, not because he navigated on Sunday, but because he navigated at all. No logical consequence follows from the time of navigation to the injury happening. As to the time, the injury is *post hoc, non propter hoc.* . . . Let Sunday navigation be right or wrong, the time is not the cause of the injury ; and the plaintiff participates not in the cause, but the wrong is the same, whether it happened on one day or another. This being the position of defendant toward the case, he cannot ask that not only the penalty of a violated statute, but that a forfeiture of a right of action not arising out of its breach, or dependent on its observance, shall be inflicted to give it efficacy. . . . It is impossible to perceive how a wrong-doer in one thing can protect himself against redress because his injury fell upon one who was a wrong-doer in another." p. 242. The case there is analogous to the present one.

If the law forbade smoking or profane swearing on the cars, and a passenger was guilty of this, and while so doing was injured by the independent fault or wrong of the defendant. it might with equal propriety be urged in defence to an action for the tort of the defendant, as is said by Dixon, C. J., in effect, in 29 Wis. 21: "The principle is that the violation

of Sunday law does not contribute to the result since it is not the natural or usual result of travelling on Sunday that dam-ages should follow."

· Bigelow on Torts, 309. " Wrongful acts or omissions cannot be set off against each other so as to make the one an excuse for the other, unless they stand respectively in the situation of true causes to the damage."

It is a misnomer to call the offence against the law contributory negligence, or "a contributory cause," unless the same operated as an efficient cause in the production of the injury. Two passengers, one travelling from necessity or charity, and the other not, sit side by side, and both using the same kind and degree of care : both are injured by defendant's tortious act. How can it be justly said that there is contributory cause, or a want of due care, in one case more than the other?

The rule adopted in the Massachusetts cases, and followed blindly in one or two other of the New England States, closely impinges on the well-settled general rule of law as to the effect of collateral unlawful acts, and is condemned in 2 Thompson on Negligence, 1093–4.

This court condemned the doctrine of two of the leading cases in Massachusetts, such as *Bosworth* v. *Swansey*, 10 Met. 363; *S. C.* 43 Am. Dec. 441; *Gregg* v. *Wyman*, 4 Cush. 322. The latter case was condemned in *Woodman* v. *Hubbard*, 25 N. H. 67; *S. C.* 7 Am. Dec. 320; and in *Morton* v. *Gloster*, 46 Maine, 520; and, finally, the case was overruled in the same court in *Hall* v. *Corcoran*, 107 Mass. 251.

The Supreme Court of Connecticut, in *Frost* v. *Plumb*, 40 Conn. 111, has dealt with the doctrine also, pushing that of the overruling case still further. ·

The state court has, however, adhered uniformly to the old general doctrine, not heeding the case cited from this court in 23 How. 209.

When the people began to realize the fact, the general court came to the rescue and overruled the doctrine as held : first, as to torts of common carriers, in the law of 1877 cited; then, generally, as to all parties, in the statute of 1884, c. 37. It is no longer the law of the State, thanks to the general court.

Upon principle, it cannot be justly held that the plaintiff's cause of action in the case at bar rests upon any illegal contract. The injury arose from a tort independent of all contract. The contract for passage was made in the State of Vermont on Saturday, and the delay of the trains was caused by an unforeseen accident, which the plaintiff was not bound to anticipate. There was no moral turpitude. "The duty imposed by law upon a carrier of passengers to carry them safely, as far as human skill and foresight can go, exists independently of contract. For a negligent injury against a passenger, an action lies against the carrier, although there be no contract, and the service he is rendering is gratuitous; and, whether the action is brought upon contract or for failure to perform the duty, the liability is the same." *Carroll* v. *Staten Island Railroad Co.*, 58 N. Y. 126; *Merritt* v. *Earle*, 29 N. Y. 115; *S. C.* 86 Am. Dec. 292.

In *Bretherton* v. *Wood*, 3 Brod. & Bing. 54, Dallas, C. J., says: "This action is on the case against a common carrier, upon whom a duty is imposed by the custom of the realm, or in other words by the common law to carry and convey their goods and passengers safely and securely, so that by their negligence or default no injury or damage happens. A breach of this duty is a breach of the law; and for this breach an action lies, founded on the common law." p. 62.

In *Philadelphia &c. Railroad Co.* v. *Derby*, 14 How. 468, 485, Grier, J., says: "This duty does not result alone from the consideration paid for the service: it is imposed by law." *Tattan* v. *Great Western Railway*, 2 El. & El. 844; Hutchinson on Torts, § 563, and cases cited therein.

If this court does not adopt the views advanced, then we submit, as to the exception of the statute, that the state court, in dealing with the case before them, were determining whether the evidence adduced was sufficient to sustain the verdict which had been rendered. They were dealing with an issue of fact, with reference to the law, and not with a rule of law simply.

What the court say in *Smith* v. *Railroad*, 120 Mass. 490, is the law of Massachusetts, namely:

"It is not easy to define, as a matter of law, what state of

facts will make travelling an act of necessity or charity within the exception in the Lord's Day Act, or when the plaintiff's own illegal conduct can be said to be a direct, rather than a remote, cause contributing to the injury. The first of these questions is to be determined, to a great extent, by considerations of moral fitness and propriety; the last by the evidence in each case bearing upon the complicated relations of cause and effect. In most cases, both questions should be submitted to the jury, with proper instructions."

So in *Feital* v. *Middlesex Railroad*, 109 Mass. 398, the court say: "The necessity of travelling, within the exception in the Lord's Day Act, is, to a great extent, determined by its moral fitness and propriety; and it would have been erroneous to have ruled, as matter of law, that travelling 'for such a purpose was not within the exception."

The court, in construing the statute as matter of law, have defined the words "necessity" or "charity" to comprehend all acts which it is morally "fit and proper should be done on the Sabbath."

"The necessity intended by the statute is not to be limited, on the one hand, to absolute physical necessity, nor, on the other hand, is it to be so enlarged as to include mere business convenience or advantage." *Davis* v. *Somerville*, 128 Mass. 594, 597.

The case in the state court, as I remember it, went to the full court on a report, so the court could determine certain exceptions, and whether the jury were justified on the case shown them in rendering the verdict. The court only held, in reviewing the facts, that the verdict was against the evidence, or without evidence, under the rules of law laid down.

The court below has held the ruling conclusive in this case, just as though it was *res adjudicata*, when such it was not, not being so pleaded, and there being no final judgment which could properly so operate, if pleaded.

A careful examination of that opinion shows that the court held adversely to the plaintiff, on the ground that he had made the aid to his sister a consideration subordinate to his secular business. I must confess that I fail to appreciate the

ground on which that idea is based. He did not arrange his secular business so as to necessitate travelling on Sunday, in Massachusetts, in violation of the statute. He planned so he would arrive in Boston early Saturday evening. He did for his sister all that mercy and charity required, in perfect consistency with an observance of the law. His necessity for travelling on Sunday for the rest of the route arose, not from his plan, but from an unforeseen emergency. The theory of the court would seem to be that he should have dropped all business at once, and gone to his sister before the time required, and should not have waited till the proper time came for him to go. He, as the case now appears, after he had looked up the dates for the first time, was to get the letter the very Saturday night in question. He had written her from Concord, N. H., some time from July 21 to 24, that he would be in Boston, Saturday, the 5th of August, that being his post-office address ; was not expecting the letter to arrive earlier than that. So long as he subserved his sister's necessities in the matter of charity, he might also regard his business interests, provided he did not in plan and course of conduct contemplate travelling on Sunday. Had he arranged to start for Boston, and travel in Massachusetts, on Sunday, instead of Saturday, he would not have been justified.

But this is not a case of that kind. He did not arrange for, nor contemplate, travelling on Sunday over defendants' road, or any other road. Had he, in violation of law, got to Boston when he expected, he could have spent Sunday in Boston, and started for Chicago Monday morning. The Massachusetts court might, but probably would not, hold the opening and reading of his sister's letter on Sunday to have been illegal, — he would have had time to do that Saturday night. The controlling element in this case, with the state court, seems to have been that his sister's letter arrived, or would have arrived, earlier, if his letter was written July 15, as was his erroneous impression in the trial of the state case, and which was corrected in the Circuit Court. But, for the life of me, I cannot see why the plaintiff was in fault, if he arranged to get to Boston as soon as the letter would, and that a week-day named.

Considerations connected with his sister, combined with the emergency, rendered it fit and proper for him to proceed as he did do. It is a strange doctrine, if held, that, when a passenger starts in season to reach Boston Saturday evening, and the train is delayed on the way, beyond the hour of midnight, he is bound to leave the train and stay over Sunday at the place where that hour finds him. He may be at that time within a few miles of his own home, or, in these days of rapid transit, within a short ride, in point of time. This is manifestly an issue of fact for the jury, even under the local law.

I have dealt with this last branch of the case, not knowing whether this court will hold to the Massachusetts decisions on the other point, or will adhere to what it has heretofore adjudged to be the true rule of general law.

*Mr. Charles A. Welch* for defendant in error cited: *Bucher* v. *Fitchburg Railroad,* 131 Mass. 156; *Jones* v. *Andover,* 10 Allen, 18; *Stanton* v. *Metropolitan Railroad,* 14 Allen, 485; *Commonwealth* v. *Sampson,* 97 Mass. 407; *Commonwealth* v. *Josselyn,* 97 Mass. 411; *McGrath* v. *Merwin,* 112 Mass. 467; *Davis* v. *Somerville,* 128 Mass. 594; *Wallace* v. *Merrimack River Navigation Co.,* 134 Mass. 95; *Day* v. *Highland Street Railway,* 135 Mass. 113; *Read* v. *Boston & Albany Railroad,* 140 Mass. 199; *Cronan* v. *Boston,* 136 Mass. 384; *Baker* v. *Worcester,* 139 Mass. 74; *Burgess* v. *Seligman,* 107 U. S. 20; *Sumner* v. *Hicks,* 2 Black, 532; *Leffingwell* v. *Warren,* 2 Black, 599; *Rowan* v. *Runnels,* 5 How. 134; *Ohio Life Ins. & Trust Co.* v. *Debolt,* 16 How. 416; *Pease* v. *Peck,* 18 How. 595; *Douglas* v. *Pike County,* 101 U. S. 677.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the District of Massachusetts.

The plaintiff in error was plaintiff in that court, and sought to recover of the defendants for injuries which he sustained by reason of their negligence while travelling upon their roads. The court on the trial substantially instructed the jury that the

plaintiff could not recover because the injury complained of occurred while he was travelling upon the Sabbath day, in violation of the law of the State of Massachusetts.

A suit between the same parties in regard to the same transaction had been brought in the Supreme Court of that State, in which, on a trial before a jury, the plaintiff obtained a verdict. This was carried to the court in bank, and was there reversed and sent back for a new trial. The plaintiff then became nonsuit in the state court and brought the present action in the Circuit Court of the United States.

It is important to inquire what was at issue upon the trial in the state court. There the defendant set up the law of the State found in the General Statutes, c. 84, § 2, which is as follows: "Whoever travels on the Lord's Day, except for necessity or charity, shall be punished by a fine not exceeding ten dollars;" and insisted that the plaintiff, being in the act of violating that law at the time the injury occurred, could not recover. On the 15th of May, 1877, after the plaintiff was injured, the legislature of Massachusetts passed a statute declaring that this prohibition against travelling on the Lord's Day should not constitute a defence to an action against a common carrier of passengers for any tort or injury suffered by the person so travelling. Mass. Stat. 1877, c. 232.

The Supreme Court of that State had decided previous to this, in *Stanton* v. *Metropolitan Railway Co.*, 14 Allen, 485, a similar case, that the plaintiff, being engaged in a violation of law, without which he would not have received the injury sued for, could not obtain redress in a court of justice. Also in *Bosworth* v. *Swansey*, 10 Met. 363, and in *Jones* v. *Andover*, 10 Allen, 18. In the trial of the case now under consideration, before the jury in the state court, the plaintiff does not seem to have controverted the general doctrine thus declared, but insisted that the present case did not come within the statute, because, first, the act of May 15, 1877, had declared that travelling on Sunday should no longer be a defence to actions for injuries suffered by reason of the negligence of carriers of passengers, although this statute was passed after the accident occurred upon which the right of action was founded; and,

second, that at the time he was injured he was, within the meaning of the statute, travelling upon an errand of charity or necessity, specially excepted from its provisions.

The court below sustained both of these propositions of the plaintiff, and the court in bank reversed the trial court upon both of them. It held that the act of May 15, 1877, did not govern a case where the injury had occurred before its passage; that it was not retroactive, and also held that the facts set out in the bill of exceptions did not show that the plaintiff was travelling at the time of the accident either from necessity or for charity. It may be as well to state here that the facts found in the bill of exceptions relating to this latter question, as it was presented before the Supreme Court of Massachusetts, were identical with those appearing in the bill of exceptions of the case now before us, being in both cases the plaintiff's own statement of his reasons for travelling on that day.

Upon the trial in the Circuit Court of the United States the judge was requested by the plaintiff to charge the jury that the circumstances detailed in the testimony of plaintiff and found in the bill of exceptions concerning the illness of his sister in Minnesota, of which he had received knowledge by letter, and had replied that he would meet her in Chicago at a certain time, and that, having been delayed by accidental circumstances, the travel on Sunday, when he was injured, became necessary to enable him to fulfil that promise, were sufficient to be submitted to the jury in order that they might pass upon the question of whether or not this act of travelling on the Lord's Day was a work of necessity or charity. This the court declined to do, saying that the same question having been submitted to the jury in the trial in the state court, and having been passed upon by the Supreme Court of the State, he did not consider that there was evidence sufficient to go to the jury upon that subject.

This is one of the assignments of error now before us, and upon this point we are of opinion that the court below ruled correctly. It is not a matter of estoppel which bound the parties in the court below, because there was no judgment entered in the case in which the ruling of the state court was

made, and we do not place the correctness of the determination of the Circuit Court in refusing to permit this question to go to the jury upon the ground that it was a point decided between the parties, and therefore *res judicata* as between them in the present action, but upon the ground that the Supreme Court of the State in its decision had given such a construction to the meaning of the words " charity " and " necessity " in the statute, as to clearly show that the evidence offered upon that subject was not sufficient to prove that the plaintiff was travelling for either of those purposes. The court in its opinion, which is reported in *Bucher* v. *Fitchburg Railroad,* 131 Mass. 156, said :

" The act of plaintiff in thus travelling on the Lord's Day was not an act of necessity within the meaning of the statute. . . . In order to constitute an act of charity, such as is exempted from the Lord's Day act, the act which is done must be itself a charitable act. The act of ascertaining whether a charity is needful is not the charity ; but, so far as the statute is concerned, the only question in that case would be, is this act a necessary act ? That involves the question, whether the act is one which it is necessary to do on the Lord's Day ; and no previous neglect to obtain the requisite information on a previous day creates a necessity for obtaining it on the Lord's Day." p. 159.

After citing other cases which had been decided in that court, it was further said :

" It is apparent that the plaintiff's duty to his sister was made subservient to his secular business. We are, therefore, of opinion that the ruling should have been given that there was no evidence which would justify the jury in finding that the plaintiff was travelling from necessity or charity, within the meaning of the statute." p. 160.

Taking, therefore, this construction of the language of the statute, as well as prior decisions to the same purport in which we think we are bound to follow the Supreme Court of the State, we agree that the record in this case as in that does not furnish evidence which should have gone to the jury upon that branch of the subject.

The other assignment of error, in regard to the effect of travelling on the Lord's Day in violation of the statute of Massachusetts, submitted as a defence to what would otherwise be a liability of the railroad for the negligence of its servants, presents the matter in a somewhat different aspect.

It is not easy to see that there was anything in the case as it arose in the Circuit Court which required a construction of the meaning of that statute, after eliminating what has just been suggested as to the signification of the words "necessity" or "charity." The remainder is a short prohibition against travelling upon the Lord's Day, and provides for the imposition of a penalty for so doing. This is very plain ; it admits of no doubt as to its meaning, and its validity has never been controverted. When, therefore, the Supreme Court of Massachusetts, in a long line of decisions, has held that the violation of this statute may be set up as a defence to a liability growing out of the negligence of a railroad company in carrying passengers upon its road, it must have been on some other ground than that to be found in the expressions used in the statute itself. There is no such provision in it, and there is no necessary inference to be drawn from its language that it was intended to control the relations between the passenger and the carrier, or to modify the obligations of the one to the other.

The language of the court in *Stanton* v. *Metropolitan Railway Co.*, already cited, is that " because the plaintiff was engaged in the violation of law, without which he would not have received the injury sued for, he cannot obtain redress in a court of justice." This principle would seem to be as applicable to a man engaged in any other transaction forbidden by law as to that of violating the Sabbath. Whether the doctrine thus laid down is a sound one, and whether, if it be not sound as it commends itself to our judgment, we should follow it as being supported by the decisions of the Supreme Court of Massachusetts in numerous instances, presents in this case the only serious question for our consideration. *Hamilton* v. *City of Boston*, 14 Allen, 475 ; *Bosworth* v. *Swansey*, 10 Met. 363 ; *Jones* v. *Andover*, 10 Allen, 18 ; *Day* v. *Highland Street*

*Railway Co.*, 135 Mass. 113; *Read* v. *Boston & Albany Railroad Co.*, 140 Mass. 199.

If the proposition, as established by the repeated decisions of the highest court of that State, were one which we ourselves believed to be a sound one, there would be no difficulty in agreeing with that court, and, consequently, affirming the ruling of the circuit judge in the present case. But without entering into the argument of that subject, we are bound to say that we do not feel satisfied, that, upon any general principles of law by which the courts that have adopted the common law system are governed, this is a true exposition of that law.

On the contrary, in the case of *Phila., Wilmington & Balt. Railroad* v. *Steam Towboat Co.*, 23 How. 209, this court had under consideration the same question. It arose in regard to the effect of a statute of Maryland forbidding persons "to work or do any bodily labor, or willingly suffer any of their servants to do any manner of labor on the Lord's Day, works of charity or necessity excepted," and prescribing a penalty for a breach thereof. It was held by this court that where a vessel was prosecuting her voyage on Sunday, and was injured by piles negligently left in the river, this statute making travelling on Sunday an offence and punishing it by a penalty, constituted no defence to an action for damages by the vessel. A number of cases were cited sustaining that view of the subject, and the court, through Mr. Justice Grier, used this language: "We do not feel justified, therefore, on any principles of justice, equity, or of public policy, in inflicting an additional penalty of seven thousand dollars on the libellants, by way of set off, because their servants may have been subject to a penalty of twenty shillings each for the breach of the statute." p. 218.

In that case, however, there had been no decision of the courts of Maryland, holding that a violation of the Sabbath would constitute a defence to the action against the company which had left the piles in the river. In this view of the matter it is not unworthy of consideration that, shortly after the injury in the present case was inflicted, the General Court of

Massachusetts passed a statute, to which we have already referred, declaring that travelling on the Lord's Day should not "constitute a defence to an action against a common carrier of passengers for any tort or injury suffered by a person so travelling."

The question then arises, how far is this court bound to follow the decisions of the Massachusetts Supreme Court on that subject?

The Congress of the United States, in the act by which the Federal courts were organized, enacted that "the laws of the several States, except where the Constitution, treaties or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply." Rev. Stat. § 721; Judiciary Act, 24 Sept., 1789, c. 20, § 34, 1 Stat. 92. This statute has been often the subject of construction in this court, and its opinions have not always been expressed in language that is entirely harmonious. What are the laws of the several States which are to be regarded "as rules of decision in trials at common law" is a subject which has not been ascertained and defined with that uniformity and precision desirable in a matter of such great importance.

The language of the statute limits its application to cases of trials at common law. There is, therefore, nothing in the section which requires it to be applied to proceedings in equity, or in admiralty; nor is it applicable to criminal offences against the United States, (see *United States* v. *Reid*, 12 How. 361,) or where the Constitution, treaties or statutes of the United States require other rules of decision. But with these, and some other exceptions which will be referred to presently, it must be admitted that it does provide that the *laws* of the several States shall be received in the courts of the United States, in cases where they apply, as the rules of decision in trials at common law.

It has been held by this court that the decisions of the highest court of a State in regard to the validity or meaning of the constitution of that State, or its statutes, are to be considered as the law of that State, within the requirement of

this section. In *Leffingwell* v. *Warren*, 2 Black, 599, this court said, in regard to the statutes of limitations of a State : " The construction given to a statute of a State by the highest tribunal of such State is regarded as a part of the statute, and is as binding upon the courts of the United States as the text."

In the case of *Luther* v. *Borden*, 7 How. 1, 40, Chief Justice Taney said : " The point then raised here has been already decided by the courts of Rhode Island. The question relates altogether to the constitution and laws of that State ; and the well-settled rule in this court is, that the courts of the United States adopt and follow the decisions of the state courts in questions which concern merely the constitution and laws of the State." See also *Post* v. *Supervisors*, 105 U. S. 667.

It is also well settled that where a course of decisions, whether founded upon statutes or not, have become rules of property as laid down by the highest courts of the State, by which is meant those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto, they are to be treated as laws of that State by the Federal courts.

The principle also applies to the rules of evidence. In *Ex parte Fisk*, 113 U. S. 713, 720, the court said : " It has been often decided in this court that in actions at law in the courts of the United States the rules of evidence and the law of evidence generally of the State prevail in those courts." See also *Wilcox* v. *Hunt*, 13 Pet. 378 ; *Ryan* v. *Bindley*, 1 Wall. 66.

There are undoubtedly exceptions to the principle that the decisions of the state courts, as to what are the laws of that State, are in all cases binding upon the Federal courts. The case of *Swift* v. *Tyson*, 16 Pet. 1, which has been often followed, established the principle that if this court took a different view of what the law was in certain classes of cases which ought to be governed by the general principles of commercial law, from the state court, it was not bound to follow the latter. There is, therefore, a large field of jurisprudence left in which the question of how far the decisions of state courts constitute the law of those States is an embarrassing one.

There is no common law of the United States, and yet the

main body of the rights of the people of this country rest upon and are governed by principles derived from the common law of England, and established as the laws of the different States. Each State of the Union may have its local usages, customs, and common law. *Wheaton* v. *Peters*, 8 Pet. 591; *Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 519.

When, therefore, in an ordinary trial in an action at law we speak of the common law we refer to the law of the State as it has been adopted by statute or recognized by the courts as the foundation of legal rights. It is in regard to decisions made by the state courts in reference to this law, and defining what is the law of the State as modified by the opinions of its own courts, by the statutes of the State, and the customs and habits of the people, that the trouble arises.

It may be said generally that wherever the decisions of the state courts relate to some law of a local character, which may have become established by those courts, or has always been a part of the law of the State, that the decisions upon the subject are usually conclusive, and always entitled to the highest respect of the Federal courts. The whole of this subject has recently been very ably reviewed in the case of *Burgess* v. *Seligman*, 107 U. S. 20. Where such local law or custom has been established by repeated decisions of the highest courts of a State it becomes also the law governing the courts of the United States sitting in that State.

We are of opinion that the adjudications of the Supreme Court of Massachusetts, holding that a person engaged in travel on the Sabbath day, contrary to the statute of the State, being thus in the act of violating a criminal law of the State, shall not recover against a corporation upon whose road he travels for the negligence of its servants, thereby establish this principle as a local law of that State, declaring, as they do, the effect of its statute in its operation upon the obligation of the carrier of passengers. The decisions on this subject by the Massachusetts court are numerous enough and of sufficiently long standing to establish the rule, so far as they can establish it, and we think that, taken in connection with the relation which they bear to the statute itself, though giving an effect

to it which may not meet the approval of this court, they nevertheless determine the law of Massachusetts on that subject.

*Affirmed.*

Mr. Justice Harlan, with whom concurred Mr. Justice Field, dissented upon the grounds:

1, That the question whether the provision in c. 84, § 2 of the General Statutes of Massachusetts that "whoever travels on the Lord's Day, except for necessity or charity, shall be punished by a fine not exceeding ten dollars" is a bar to a recovery in this action, is a question of general law upon which the Federal courts are at liberty to follow their own convictions; and,

2, That it is settled by *Philadelphia, Wilmington, and Baltimore Railroad* v. *Philadelphia and Havre de Grace Towboat Co.*, 23 How. 209, that such a state statute is not a bar to a recovery in an action like this in a Federal court.