## UNION CENTRAL LIFE INS. CO. OF CINCINNATI, OHIO, v. HOFFMAN et al.

### No. 281.

District Court, D. Nebraska, Norfolk Division.

April 7, 1937.

from and after the 16th of February, 1937. Section 1 of the act is as follows:

"It is hereby declared that the provisions of this Act are made necessary, and such necessity is hereby found to exist by emergencies growing out of the present economic crisis, world wide in its scope, and by the additional facts that the state of Nebraska in the year 1936 experienced an unprecedented drought, and in certain parts of the state suffered from insect pests, which resulted in practical total loss to the agricultural interests of the state of the 1936 crop, and thereby threatening a collapse in the value of all real estate in the state of Nebraska, such condition being dangerous to the general welfare and prosperity of the state and its people; and in order to relieve such condition, this Legislature hereby invokes the police power inherent in the state of Nebraska and any and all of its branches of government; and the regulations herein contained being designed to promote the public safety and the public welfare of the state, and to enable its people to meet an emergency which it deems of immediate importance."

By section 2 of the act, it is provided that "in all actions now pending and hereafter commenced for the foreclosure of real estate mortgages, etc.," "upon application of the owner or owners of such real estate or persons liable on such mortgages * * * made at any time after the decree of foreclosure * * * is rendered, and before confirmation of the sale * * * unless upon hearing on said application good cause is shown to the contrary, order that all further proceedings in such action be stayed until the 1st day of March, 1939." Then follows provision for the payment of rental by the party in possession and the application and distribution thereof.

This case, and eight others of like nature wherein the facts are almost identical, has been submitted to the court upon application for a moratorium order, together with objections of the plaintiff thereto. In support of the objections, the plaintiff has submitted oral testimony, and evidence in the form of affidavits. It is the contention of the plaintiff that the mortgage security has so depreciated in value as to be insufficient to satisfy plaintiff's debt, and that this constitutes "good cause" for denying the application.

It is not contended by the plaintiff that the application of the act is an unlawful application or use of the police power of

R. O. Williams, of Lincoln, Neb., for plaintiff.

Jackson & Rice, of Neligh, Neb., for defendant.

DONOHOE, District Judge.

The Legislature of Nebraska passed an act known as the Moratorium Law of 1937, which was approved and became effective

the state. The facts warranting this extraordinary use of the police power are recited in the first section of the act. If additional considerations are necessary, it may be further stated that the "economic crisis, world wide in its scope," has continued now unabated for many long years past, and as a result there has been no market whatever for farm lands, and that, because of the crop failures, due to the drought, and the grasshoppers, there has been little, if any, production of crops from the Nebraska farm. This condition is not local. It is state-wide—in fact, it extends beyond the state to the surrounding states. Due to this condition, the whole farming industry seems to be breaking down. This is a matter, not of private concern, but of great public interest. It is a matter in which our whole population is vitally involved. When a similar law in the state of Minnesota was before the Supreme Court of the United States (Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398–442, 54 S.Ct. 231, 241, 78 L.Ed. 413, 88 A.L.R. 1481), Chief Justices Hughes, in considering the situation, while speaking for the court, said:

"It is manifest from this review of our decisions that there has been a growing appreciation of public needs and of the necessity of finding ground for a rational compromise between individual rights and public welfare. The settlement and consequent contraction of the public domain, the pressure of a constantly increasing density of population, the interrelation of the activities of our people and the complexity of our economic interests, have inevitably led to an increased use of the organization of society in order to protect the very bases of individual opportunity. Where, in earlier days, it was thought that only the concerns of individuals or of classes were involved, and that those of the state itself were touched only remotely, it has later been found that the fundamental interests of the state are directly affected; and that the question is no longer merely that of one party to a contract as against another, but of the use of reasonable means to safeguard the economic structure upon which the good of all depends."

For the foregoing, among other, reasons set forth in the opinion, the Supreme Court of the United States held that the moratorium law was not an unwarranted use of the police power.

It is the contention of the plaintiff that the defendant is not entitled to the benefit of the moratory law because he does not have any equity in his land over and above the mortgage debt. Our attention has been called to decisions of the Supreme Court of Nebraska, construing a similar statute, in which it was held that the intent of the law was not to grant a moratory stay to every one as a matter of right, but only to relieve those mortgagors who have an interest in their lands. Clark v. Hass, 129 Neb. 112, 260 N.W. 792; First Trust Co. of Lincoln v. Hickey, 130 Neb. 351, 264 N.W. 888; Luikart v. Graf, 130 Neb. 736, 266 N.W. 641; First Trust Co. of Lincoln v. Stenger, 130 Neb. 750, 266 N.W. 642; Lincoln National Life Ins. Co. v. Richards (Neb.) 271 N.W. 794. With this construction of the statute we are in accord. The courts of the United States adopt and follow the decisions of the highest court of the state in questions which concern merely the constitution and laws of that state. Bucher v. Cheshire Ry. Co., 125 U.S. 555, 8 S.Ct. 974, 31 L.Ed. 795. Our decision, however, turns on the question of the weight and sufficiency of the evidence, of value in the light of the principles of justice, equity, and public policy which are involved.

The plaintiff has undertaken to establish by evidence that "good cause" exists for denying the defendant the benefit of the law, because the present value of the mortgaged property is less than the amount due on the mortgage debt; that, because of the economic depression and crop failures, the value of the land has fallen away so that there is now nothing left for the landowner. This is the very reason assigned by the Legislature as warranting the passage of the law as a means of preventing the financial destruction of the farmers of Nebraska. Certain witnesses have been called, and by way of qualification have testified that they were either farmers, real estate men, or field men for the insurance companies, and, because of their business and experience, were acquainted with the value of different real estate, and thereupon arbitrarily fixed a figure at which they said was the value of the land.

Now, every one will concede that the elements which go to fix or place a value upon real estate are:

(1) The price at which lands of like character and location are bought and sold.

(2) Nature, quantity, and quality of crops produced.

(3) Location as to markets, schools, churches, etc.

(4) Sufficiency of improvements.

(5) State of cultivation.

It also appears without question that there is absolutely no land selling in the locality, and that the crops were a total failure for the last few years. Without these "yard sticks" to apply, how can any man say at this time what a piece of real estate is worth anywhere in the state of Nebraska? If we are going to apply the five elements in placing value upon lands, then they must be present, otherwise no man is in a position to say what land is worth. In so far as the land involved in this case is concerned, should it not be valued as of the time when lands were selling and when the crops were normal, or at least should it not be valued on a basis of what similar lands had sold for over a period of years when lands were selling, and what such lands produced on an average throughout a period of years? This economic depression is temporary. The crop failures are likewise temporary. It would seem that the only fair basis upon which we may undertake to place a valuation on real estate is to consider the prices at which land was selling when there was a market for land, and to consider the average crops produced by the land throughout the years. If we do so, then we must put the valuation of the land back where it was when the calamity came, or nearly so, and we must expect that value to be there when the calamity is removed. The last three elements above enumerated remain now as they existed when the mortgage was made, and these elements will be the same when the first two elements come back again. The evidence submitted by plaintiff for these reasons is of little weight, and is not convincing to say the least.

The very heart and purpose of the moratory law in question is to prevent the appraisal of these mortgaged lands by sale at this time during this depression and crop failure, without a "yard stick," and to prevent the loss to the owner of his property because under the conditions prevailing there is no one to fix a price except the holder of the mortgage, and that too often based on the whim of the moment. In this case a receiver has been appointed to collect and apply the rentals and to protect the buildings by insurance and repair. The position of the mortgagee is just as favor-able in so far as the security is concerned now as it would be if the sale was confirmed and the moratory order denied. There is no serious contention in this case that the property is being depreciated by neglect or want of care, the only depreciation to the improvements being that of ordinary wear and the effect of the elements.

When this economic depression period passes, when the pests have gone, and when it rains again, all of which is sure to happen, values will come back. Then, in equity and good conscience, any valuation over and above the mortgage debt should inure to the owner rather than to the mortgagee. The mortgagee is now enjoying all property rights that it would enjoy upon completion of the foreclosure except the title, and all that is involved now is whether the farmer shall have the right to enjoy the value of his farm when the value comes back, or whether that right shall not be transferred to the mortgagee. When lands come back in value, as we all confidently expect, the mortgagee will receive payment for all of its expenditures, including interest. If the value of the property is then beyond that, the remainder will be left for the farmer. If there is no increase beyond the encumbrance at that time, then the position of the mortgagee will be no different than it would be if it had become possessed of the title now. This is a proceeding directed to the discretion of the court. On the one hand, there is a litigant who stands to lose his all if the moratorium is denied, while, on the other hand, we have a litigant whose position will be no worse, if not better, at the expiration of the time herein granted. But it is suggested that in the meantime the mortgagee is deprived of the actual possession of his property; that its position is not as advantageous in making a lease with the owner as it would be if the lease were made with a stranger. Plaintiff seems to be apprehensive that so long as the owner is in possession of the property that its rights will in some way be jeopardized. This same contention was made to the Supreme Court of the United States. Robert Page Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, Va., 57 S.Ct. 556, 563, 81 L.Ed. ——, decided March 29, 1937. A unanimous court, speaking by Justice Brandeis, in considering the matter, said:

"The argument is that possession by the mortgagor during the stay is necessarily less

834

favorable to the mortgagee than possession by a receiver or trustee would be. This is not true. The mortgagor is in default, but it is not therefore to be assumed that he is a wrongdoer, or incompetent to conduct farming operations. The legislation is designed to aid victims of the general economic depression. The mortgagor is familiar with the property, and presumably vitally interested in preserving ownership thereof and ready to exert himself to the uttermost to that end. It is not unreasonable to assume that, under these circumstances, the interests of all concerned will be better served by leaving him in possession than by installing a disinterested receiver or trustee. For the mortgagor holds possession charged with obligations imposed for the benefit of the mortgagee as fully as if the property were in the possession of a receiver or trustee."

While the court was considering the Frazier-Lemke Act, as amended, 11 U.S.C.A. § 203(s) in the case of Robert Page Wright v. Vinton Branch of Mountain Trust Bank, supra, instead of a moratory law, still the matter in question is, we think, identical in either case. There is no one more concerned or interested in protecting the property than is the farmer who must depend upon his title to preserve in many cases the fruits of a life of toil and a home for his family. While in this case we have a receiver, as stated, for the purpose of collecting the rentals, we feel that it is to the best interests of all parties concerned that the real owner himself shall be the one to occupy the premises and till the soil.

Since the mortgagee has the burden of proof to show "good cause" why this moratory order should not issue, and since for the reasons we have stated it has wholly failed to show any "good cause," we must overrule its objections. We feel, however, that the moratory order should at this time be entered for one year, or until the 1st day of April, 1938, instead of the 1st day of March, 1939, in order that the mortgagee may be given an opportunity at that time to show changed conditions, if such there be, warranting other action than is now taken. It is therefore the order of the court that the objections of the plaintiff are overruled, and moratorium is granted until April 1, 1938.