## KAIN v. GIBBONEY.

1. In Virginia, since her repeal of the statute of 43d Elizabeth, c. 4, charitable bequests stand upon the same footing as other bequests, and her courts of chancery have no jurisdiction to uphold a charity where the objects are indefinite and uncertain. Such being the settled doctrine of her court of last resort this court accepts and enforces it in passing upon an attempted testamentary disposition of property which is claimed under the law of the State to be a valid gift for charitable uses.

2. A., who resided and died in Virginia, by her last will and testament, bearing date Dec. 9, 1854, and admitted to probate in 1861, bequeathed her property and money to B., "Roman Catholic bishop of Wheeling, Virginia, or his successor in said dignity, who is hereby constituted a trustee for the benefit of the community" (an unincorporated association previously described as a religious community attached to the Roman Catholic Church), the same "to be expended by the said trustee for the use and benefit of said community." *Held,* 1. That the bequest, conceding it to be for charitable uses, is invalid. 2. That the legislation of Virginia touching devises or bequests for the establishment or endowment of unincorporated schools or validating *conveyances* for the use and benefit of any religious society does not apply to this bequest.

APPEAL from the Circuit Court of the United States for the Western District of Virginia.

On Aug. 7, 1853, Malvina Matthews, of Wythe County, Virginia, made her last will and testament, which was duly admitted to probate, devising a tract of land on which she then lived, to Granville H. Matthews in trust for her two daughters, Malvina and Eliza, and authorizing him to sell it and invest

the proceeds at his discretion ; one half of the annual interest
or dividends accruing therefrom to go to each of them as a
fund, for her separate and sole use and benefit, especially in
the event of her marriage. The will declared that one moiety
of the principal arising from the sale of the land might be
disposed of by each, either by deed to take effect after her
death, or by will, and not otherwise.

Matthews sold the land, but was removed from the executor-
ship and trusteeship ; and Robert Gibboney, who was appointed
in his stead, received of the trust fund $7,985.88, of which
one-half belonged to said Eliza. The latter died, and her
will, bearing date Dec. 9, 1854, was, in 1861, admitted to pro-
bate in the county court of Wythe County. Robert Gib-
boney qualified as her administrator. The will, after making
various pecuniary bequests, among them one of $500 to
" Richard V. Wheelan, Roman Catholic Bishop of Wheeling,
Virginia, and his successors in that church dignity," contained
the following provision : —

" In the event that I may hereafter become a member of any of
the religious communities attached to the Roman Catholic Church,
and am such at the time of my death, then it is my will that all the
foregoing bequests and legacies be void, and that my executors
hereinafter named shall pay over the whole of the property or other
thing, after disposing of the same for money, to the aforesaid Rich-
ard V. Wheelan, bishop as aforesaid, or his successor in said dig-
nity, who is hereby constituted a trustee for the benefit of the
community of which I may be a member, the said property or
money to be expended by the said trustee for the use and benefit
of said community."

After making her will, she became a member of an unincor-
porated religious community attached to the Roman Catholic
Church, known as the " Sisters of Saint Joseph," and was
such at the time of her death.

In 1871, Alexander S. Matthews, her brother, instituted a suit
against her legatees and other heirs-at-law in the Circuit Court
of said county, to contest the validity of her will. An issue
of *devisavit vel non* was ordered but not tried, as by consent of
the counsel of the parties it was decreed that he should be paid
from her estate the part thereof to which he would have been

entitled had she died intestate; and that the devisee named in the will should proceed to collect the estate, and, after paying the debts and costs of suit, pay to said Alexander the tenth part. The suit was thereupon dismissed, with leave to have the same reinstated if necessary, for the purpose of enforcing the decree.

Some time thereafter, Elizabeth G. Gibboney, the executrix of Robert Gibboney, who had departed this life, delivered to Wheelan, as part of the estate of Eliza, a bond of one Johnson for $500.

Thereupon Wheelan brought this suit, in the court below, against said Elizabeth, to recover the residue of that estate, and alleged that said Robert had never invested the fund which he received as the trustee of Eliza, but had converted it to his own use, except the bond of Johnson.

Wheelan died, and John J. Kain having been duly appointed Bishop of Wheeling, the suit was revived in his name.

The bill was, on demurrer, dismissed, and Kain appealed to this court.

*Mr. John W. Johnston* for the appellant.
*Mr. John A. Campbell, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The bequest which the complainant seeks to enforce by this bill was an attempted testamentary disposition under the law of Virginia, and the matter now to be determined is whether by that law it can be sustained. It may be conceded that, notwithstanding its uncertainty, a legacy given in the words of this will, if for a charity, would be held valid in England, and in most of the States of the Union. But we have now to inquire, What is the law of Virginia? The gift was made to " Richard V. Wheelan, Bishop of Wheeling, or to his successor in said dignity." It was, therefore, in effect, a gift to the office of the Bishop of Wheeling. Neither Bishop Wheelan, nor any bishop succeeding him, was intended to derive any private advantage from it. Nothing was intended to vest in him but the trust, and that was required to be executed by whomsoever should fill the office of bishop, only so long as he should fill it,

and executed in his character of bishop, not as an individual. The bequest was practically to a bishopric, and as a bishop is not a corporation sole, it may be doubted whether, at the decease of the testatrix, there was any person capable of taking it. True it is, that generally a trust will not be allowed to fail for want of a trustee: courts of equity will supply one. But if it could be conceded that Wheelan was, in his lifetime, capable of taking the bequest, and that Bishop Kain is capable of taking and holding after the death of his predecessor, a greater difficulty is found in the uncertainty of the beneficiaries for whose use the trust was created. In the words of the will, they are a religious community, of which the testatrix contemplated she might die a member. She died a member of a religious community attached to the Roman Catholic Church, known as the "Sisters of St. Joseph." That is an unincorporated association, and it is the association as such, and not the individual members who composed it, when the testatrix died, which is declared to be the beneficiary. Nor is it the community attached to any local church which is designated, but a community attached to the Roman Catholic Church, wherever that church may exist. Its members must be constantly changing, and it must always be uncertain who may be its members at any given time. No member can ever claim any individual benefit from the bequest, or assert that she is a *cestui que trust ;* and the community having no legal existence, can never have a standing in court to call the trustees to account. This bequest is, therefore, plainly invalid, unless it can be supported as a charity. And it is far from evident that it is a gift for charitable uses. It looks more like private bounty. Charity is generally defined as a gift for a public use. Such is its legal meaning. Here the beneficial interest is given to a religious community, but not declared to be for religious uses. There is nothing in the will to show that aid to the poor, or aid to learning, or aid to religion, or to any humane object was intended.

Conceding, however, that it is a charitable bequest, it is a Virginia gift, by a Virginia will, and in that State charities in general are not upheld to any greater extent than ordinary trusts are. This will be very manifest when the decisions of

the courts of the State and of this court are reviewed. The subject was fully considered in *Baptist Association* v. *Hart's Executors* (4 Wheat. 1), decided in 1819. There it appeared that the testator, a citizen of Virginia, had bequeathed certain military certificates to " the Baptist Association that for ordinary meets at Philadelphia annually," to be a perpetual fund for the education of youths of the Baptist denomination, who shall appear promising for the ministry, always giving a preference to the descendants of his father's family. Before the death of the testator the legislature of the State had repealed all English statutes, including, of course, the 43d Elizabeth, c. 4, at that time generally regarded as the origin of the jurisdiction of equity over charities. This court held that the Baptist Association, not having been incorporated at the testator's decease, could not take the trust as a society. 2. That the individuals composing it could not take. 3. That there were no persons who could take, if it were not a charity. 4. That the bequest could not be sustained as a charity. 5. That charitable bequests, where no legal interest is vested, and which are too vague to be claimed by those for whom the beneficial interest was intended, cannot, independently of the 43d Elizabeth, c. 4, be sustained by a court of equity, either in exercising its ordinary jurisdiction, or in enforcing the prerogative of the king as *parens patriæ*.

It is true, that the fifth rule thus announced, as a general proposition, is now known to have been erroneously stated. Trusts for charitable uses are not dependent for their support upon that statute. Before its enactment, they had been sustained by the English chancellors in virtue of their general equity powers in numerous cases. *Vidal* v. *Girard's Executors*, 2 How. 127. And generally, in this country, it has been settled that courts of equity have an original and inherent jurisdiction over charities, though the English statute is not in force, and independently of it. It is believed that such is the accepted doctrine in all the States of the Union, except Virginia, Maryland, and North Carolina. But, as we have said, the rule in Virginia is different, and it has been different ever since the case of *Vidal* v. *Girard's Executors* was decided.

In 1832, the case of *Gallego's Executors* v. *The Attorney-General* (3 Leigh (Va.), 450) came before the Court of Appeals of that State. A testator had directed his executors to lay by $2,000, " to be distributed among needy poor and respectable widows ; " and in case the Roman Catholic chapel should be continued at the time of his death, he directed the executors to pay $1,000 towards its support, and if the Roman Catholic congregation should come to a determination to build a chapel at Richmond, to pay $3,000 towards its accomplishment. He further devised a lot to four trustees, in trust, to permit all and every person belonging to the Roman Catholic Church as members thereof, or professing that religion and residing in Richmond, to build a church on the lot for the use of themselves, and of all others of their religion who might thereafter reside in Richmond. These were undoubtedly gifts to charitable uses. Upon an information and bill in chancery to enforce the bequest and devise as charities, it was held that they were all uncertain as to the beneficiaries, and therefore void. The court ruled that the English statute of charitable uses having been repealed in Virginia, the courts of chancery of that State had no power to enforce charities where the objects are indefinite and uncertain, and that charitable bequests stand on the same footing as other bequests. The opinion of President Tucker is very elaborate, and fully sustains that view, approving the doctrine announced in *Baptist Association* v. *Hart's Executors, supra.*

This case was followed by *Wheeler* v. *Smith et al.* (9 How. 55), decided in 1850, after Vidal's case. It reasserted the doctrine of *Gallego's Executors* v. *The Attorney-General* (*supra*), as the law of Virginia, and declared that the courts of chancery had no jurisdiction to uphold charities when the objects are indefinite and uncertain. Therefore, a bequest for a public purpose, namely, one given to trustees " for such purposes as they might consider to be most beneficial to the town and trade of Alexandria," was declared void.

In *Seaburn's Executors* v. *Seaburn* (15 Gratt. (Va.) 423), the case of *Gallego's Executors* v. *The Attorney-General* was again recognized as the law of the State, except so far as it had been modified by the statutes, and it was ruled that they did not

authorize a devise of land for the use of a religious congrega-
tion, but a conveyance only. *A fortiori*, that it did not author-
ize a bequest of money, to be expended in building a church
at a specified place, or for the support of the pastor of such
church.

So in a case not reported, a devise in these words : " I give
to the Rev. W. J. Plummer, D.D., the residue of my estate,
real and personal, in trust for the board of publication of the
Presbyterian Church of the United States," was held to be
void.

We do not overlook the fact that there are cases in which
trusts for charitable uses have been sustained, though the de-
scription of the beneficiaries was uncertain, but in them all the
decisions have been rested upon statutes of the State enacted
to provide for special cases. In 1841–42, an act was passed by
which it was declared that every *conveyance* should be valid
which should thereafter be made of land for the use or benefit
of any religious congregation, as a place for public worship,
or as a burial place, or a residence for a minister. This was
amended in 1866–67 by adding " or for the use or benefit of any
religious society, or a residence for a bishop, or other minister
or clergyman, who, though not in special charge of a congrega-
tion, is yet an officer of such church or society, and employed
under its authority and about its business." Civil Code of
1860, c. 78, tit. 22, sect. 8; Civil Code of 1873, c. 76, tit. 22,
sect. 8. It will be observed these statutes validate only con-
veyances. They controlled the decision made in *Brooke et al.*
v. *Shacklett* (13 Gratt. (Va.) 301), decided in 1856, and *Sea-
burn's Executors* v. *Seaburn* (*supra*), decided in 1859. The
first of these cases — a deed conveying property in trust for
the erection of a local Methodist church and the use of its
members — was sustained. But Gallego's case was expressly
recognized as the law of the State, except so far as the statute
had changed it.

On the 2d of April, 1839, the legislature passed an act de-
claring that devises and bequests for the establishment or
endowment of unincorporated schools, academies, or colleges,
should be valid, requiring, however, that reports of the devises
or bequests should be made to the legislature, and that in case

it should fail to incorporate the schools, academies, &c., within a certain time, the gifts should fail.  Acts of 1839, c. 12, 11, 13.

So, also, at an early date, the State created a corporation to manage what was called the literary fund (Civil Code of 1860, chapters 78, 79, 80), and by the sections of chapter 80 it was enacted that every gift, grant, devise, or bequest made since April 2, 1839, or which might be made thereafter, for literary purposes, or for the education of white persons within the State (other than for the use of a theological seminary), whether made to a body corporate or unincorporated, or to a natural person, should be as valid as if made to or for the benefit of a certain natural person, with some exceptions.  Under these and similar statutes charitable gifts in favor of the literary fund, or of schools, have been sustained, which, without the statutes, would have been held invalid.  Such were *Literary Fund* v. *Dawson*, 10 Leigh (Va.), 147, and 1 Rob. (Va.) 402; *Kinnaird* v. *Miller, ex'r & als.* 25 Gratt. (Va.) 107, and *Kelly* v. *Love*, 20 id. 124. But in all these cases the general law of the State is recognized to be as asserted in *Gallego's Executors* v. *The Attorney - General*.  The bequest now under consideration, therefore, cannot be sustained as a charity.

Equally certain is it that the complainant cannot stand upon the consent decree made by the Circuit Court of Wythe County upon the issue of *devisavit vel non*, ordered to try whether the instrument purporting to be the will of the testatrix was her will.  That issue, framed to try only the validity of the instrument, not the validity of the disposition made by it, was never tried.  It was dismissed.  No decree was made that the will was valid.  To the agreement recited in the decree the defendant was not a party, and the arrangement made by the counsel of the parties to the record did not bind her. Moreover, if she had been bound by it, it conferred no right upon the present complainant.

*Decree affirmed.*