KUHN v. FAIRMONT COAL CO.

(Circuit Court, N. D. West Virginia. April 16, 1907.)

COURTS—FEDERAL COURTS—FOLLOWING STATE DECISION—RULES OF PROPERTY.

Where the highest court of a state decided that a deed to coal underlying certain land did not contain an implied covenant obligating the grantee to sustain the surface, such decision became a rule of property, which would be followed by the federal courts as to land located in such state when called on to determine the effect of a similar deed.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 958, 959.

Conclusiveness of judgment between federal and state courts, see note to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

Trespass on the Case. Upon demurrer.

H. W. Williams and Harvey W. Harmer, for plaintiff.
John Bassel, Z. T. Vinson, and C. Powell, for defendant.

DAYTON, District Judge. Barton W. Kuhn, a citizen of Ohio, has brought this original action of trespass on the case against the Fairmont Coal Company, a West Virginia corporation, alleging himself to be the owner of a certain tract of land in Marion county, this state, containing 91 acres, the coal underlying which he on November 1, 1899, sold and conveyed to Johnson N Camden, "with right to enter upon and under said land, and to mine, excavate, and remove all of said coal, and remove upon and under the said land the coal from and under adjacent, coterminous, and neighboring lands, and also the right to enter upon and under the tract and make all necessary structures, roads, ways, excavations, airshafts, drains, drainways, and openings necessary or convenient for the mining and removal of the said coal and the coal from coterminous and neighboring lands to market"; that this right to the coal, by various conveyances, has vested in the defendant, Fairmont Coal Company, which has so mined it and removed the supporting pillars as to cause the surface to break, crack, rend, and sink so as to damage the value thereof, for farming and other purposes, to the extent of $10,000. To this declaration the defendant company has appeared, craved oyer of the deed set forth in the declaration, and, when read to it, has demurred and alleged that such declaration presents in law no cause of action against it.

It is this demurrer that I am to pass upon. It seems from the records and reports of the Supreme Court of Appeals of West Virginia that, prior to the institution of this suit, one Leander Griffin in the circuit court of Harrison county, this state, instituted a like action of trespass on the case, upon a contract or deed containing precisely the same covenants as to the removal of the coal that are presented here, claiming similar damages for injury to the overlying surface. This

action was heard by the state court, and it was by the judge thereof decided that, under the grant of the deed to the company of all the coal underlying the land and the right to remove the same, there was no implied reservation that the grantee must leave enough coal to support the overlying surface, and that no cause of action therefore existed in the plaintiff owner of such surface for damages done it by the mining out of the coal. To this judgment of the lower court a writ of error was sued out to the Supreme Court of Appeals of the state, where the question was most elaborately considered after argument twice had, upon the original and rehearing, and that court, with but one dissenting voice, affirmed the holding of the lower court. Three very elaborate and able opinions are filed, two in affirmance and one for dissent, which cover some 50 pages—53 S. E. 24–75 (59 W. Va. 480, 2 L. R. A. [N. S.] 1115)—and in which the authorities, pro and con, are given and fully discussed.

The first question for me to determine is whether I should follow the construction of this contract thus given by the court of last resort of the state; for, if it is my duty so to do, under that construction, the plaintiff here will have no cause of action, and the demurrer must be sustained. It cannot be gainsaid that by the deed in controversy the plaintiff parted with his title to the coal underlying his land, and that, through this deed and subsequent conveyances, title to the same has become vested in the defendant company. This coal in its natural state is as much real estate as is the surface. This decision of the Supreme Court of Appeals of the state in the Griffith Case, containing precisely the same words of grant and covenant, must therefore be held to be one relating to the property right and title of the parties to real estate in West Virginia, and to establish the local law as to real estate so held. Without attempting to discuss the broad question of just when and to what extent federal courts will follow the decisions of state courts, which question has given rise to so much and to a considerable extent diverse opinion, it is sufficient to say that it is now settled beyond peradventure that the federal courts will in all actions at law follow and be governed by such decisions of the state courts of last resort which relate to and define the property rights and title to real estate within the confines of such states. In Jackson v. Chew, 12 Wheat. 153, 167 (6 L. Ed. 583), it is said:

"It has been urged, however, at the bar that this court applies this principle only to state constructions of their own statutes. It is true that many of the cases in which this court has deemed itself bound to conform to state decisions have arisen on the construction of statutes; but the same rule has been extended to other cases; and there can be no good reason assigned why it should not be, when it is applying settled rules of real property. This court adopts the state decisions because they settle the law applicable to the case; and the reasons assigned for this course apply as well to rules of construction growing out of the common law as the statute law of the state when applied to the title to lands. And such a course is indispensable, in order to preserve uniformity; otherwise, the peculiar Constitution of the judicial tribunals of the states and of the United States would be productive of the greatest mischief and confusion."

In Bucher v. Cheshire R. R. Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795, the Supreme Court has held:

"The courts of the United States adopt and follow the decisions of the highest court of a state in questions which concern merely the Constitution or laws of that state; also where a course of those decisions, whether founded on statutes or not, have become rules of property within the state; also in regard to rules of evidence in actions at law; and also in reference to the common law of the state, and its laws and customs of a local character, when established by repeated decisions."

At page 583 of 125 U. S., page 974 of 8 Sup. Ct. (31 L. Ed. 795), in the opinion in this case, Mr. Justice Miller defines "the rules of property" referred to above to be those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto. See, also, Hinde v. Vattier, 5 Pet. 398, 8 L. Ed. 168; Van Rensselaer v. Kearney, 11 How. 297, 13 L. Ed. 703; Christy v. Pridgeon, 4 Wall. 196, 18 L. Ed. 322; Williamson v. Suydam, 6 Wall. 723, 18 L. Ed. 967; Williams v. Kirtland, 13 Wall. 306, 20 L. Ed. 683; Walker v. Commissioners, 17 Wall. 648, 21 L. Ed. 714; Townsend v. Todd, 91 U. S. 452, 23 L. Ed. 413; U. S. v. Fox, 94 U. S. 315, 24 L. Ed. 192; Barrett v. Holmes, 102 U. S. 655, 26 L. Ed. 291; Peters v. Bain, 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696; Randolph's Ex'r v. Quidnick Co., 135 U. S. 457, 10 Sup. Ct. 655, 34 L. Ed. 200; De Vaughn v. Hutchinson, 165 U. S. 566, 17 Sup. Ct. 461, 41 L. Ed. 827; Traction Co. v. Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462.

But, in addition to all these authorities, I think the question decisively settled by the case of Foster v. Elk Fork Oil & Gas Co., 90 Fed. 178, 32 C. C. A. 560, arising in this state and decided by the Circuit Court of Appeals for this circuit, where it is held:

"The decisions of the courts of a state as to the construction and effect of mining leases therein establish a rule of property which will be recognized and followed by the federal courts."

No better case, it seems to me, could be found to illustrate the wisdom of this rule so uniformly upheld by federal decisions than the one at bar. Suppose this court should not follow the ruling made by the state court, but, on the contrary, should hold the opposite. In such case, the right, title, and interest of this coal company in and to the coal held by it under these contracts with identical terms would be wholly dependent upon the residence of the several vendors. So long as such vendor remained a citizen of West Virginia, he would be bound by the decisions of the courts of the state holding the company to have the unrestricted right to mine out and remove its coal in its entirety, regardless of damage done to the overlying surface. The moment he became a nonresident he could appeal to this court, holding that the company's right, title, and interest to its coal was limited by an enforceable implied liability to remove only so much thereof as could be safely done without danger to the overlying surface. The misfortune, not to say absurdity, of such a situation, makes uniformity of decision a necessity, and the Supreme Court has wisely held that, whether federal courts in such cases may approve or disapprove of the judgment of the state court, they will nevertheless follow them. A striking illustration of this consistent course on the part of the Supreme Court appears when we remember that, in 1819, Chief Justice

Marshall rendered the opinion in Baptist Association v. Hart, 4 Wheat. 1, 4 L. Ed. 499, a Virginia case, wherein he held a devise to this religious body void, both as a conveyance to a voluntary association and as a charity, ruling that courts of equity had no power to administer such charities. This doctrine was reaffirmed in Kain v. Gibboney, 101 U. S. 362, 25 L. Ed. 813, another Virginia case, in 1879, although in Russell v. Allen, 107 U. S. 163, Mr. Justice Gray, at page 167, 2 Sup. Ct. 327, 27 L. Ed. 397, says the original case was decided upon an imperfect survey of the early English authorities, and upon the theory that the English law of charitable uses, which, it was admitted, would sustain the bequest, had its origin in the statute of Elizabeth which had been repealed in Virginia. That theory has since, upon a more thorough examination of the precedents, been clearly shown to be erroneous. Vidal v. Girard's Ex'rs, 2 How. 127, 11 L. Ed. 205; Perin v. Cary, 24 How. 465, 16 L. Ed. 701; Ould v. Washington Hospital, 95 U. S. 303, 24 L. Ed. 450. And the only cases in which this court has followed the decision in Baptist Association v. Hart have, like it, arisen in the state of Virginia, by the decisions of whose highest court charities, except in certain cases specified by statute, are not upheld to any greater extent than other trusts. Wheeler v. Smith, 9 How. 55, 13 L. Ed. 44; Kain v. Gibboney, 101 U. S. 362, 25 L. Ed. 813.

The demurrer to this declaration must therefore be sustained, as presenting in law no cause of action.