FRETTS v. SHRIVER et al.

(Circuit Court, N. D. West Virginia. July 28, 1910.)

COURTS (§ 367*)—FEDERAL COURTS—FOLLOWING STATE DECISION—RULE OF PROPERTY.

A unanimous decision of the highest court of a state construing a writing relating to the sale of a vein of coal underlying land in that state, and holding it to be an option and not a contract of sale, establishes a rule of property, and will be followed by a federal court in construing another contract relating also to property in that state and identical in terms.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 958, 959; Dec. Dig. § 367.*

State laws as rules of decision, in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71, Hill v. Hite, 29 C. C. A. 553.]

In Equity. Suit by A. E. Fretts against Lee R. Shriver and others. On demurrer to bill. Demurrer sustained.

Goodwin & Reay and W. G. Bennett, for plaintiff.
Blue & Dayton and S. F. Glasscock, for defendants.

DAYTON, District Judge. Complainants on June 4, 1909, filed their original bill in this court, asking specific performance of what they allege to have been a contract of sale to them by defendants of the Pittsburg or River vein of coal underlying a tract of 230 acres of land in Monongalia county, W. Va. Jurisdiction is not questioned by reason of diverse citizenship, but defendants have interposed a de-

murrer to the bill, alleging, among other things, the contract in controversy to have been an option and not a contract of sale, and that the terms of the option were not complied with by plaintiffs, whereby it became void. The material part of the contract is as follows:

"The said coal to be paid for as follows, at the rate of twenty-five ($25.00) dollars per acre: One dollar on the signing of this agreement and the balance on payments as the party of the first part (the landowner) elects. The deed to be made for the above described tract of coal by the party of the first part, their heirs or assigns on 15 days notice in writing by the party of the second part, his heirs or assigns. A good deed with general warranty to be made whenever the unpaid purchase money is secured by bond with mortgage on the premises. A failure of the party of the second part to make the first payment within thirty days from the above date shall render this agreement null and void. The full amount for the above described coal is to be paid when deed is made as above stated."

This demurrer was very ably and exhaustively argued both orally and in briefs filed by counsel on March 23, 1910. By reference to the case of Tennant's Heirs v. Fretts et al. (W. Va.) 68 S. E. 387, it appears that Peter Tennant on the same day that the contract here bears date executed to Fretts a contract identical in terms with those above quoted, touching the same vein of coal underlying his farm of 163 acres situate in the same county; that subsequently his heirs instituted suit in the circuit court of Monongalia county against the two plaintiffs in this cause, asking that such contract be declared void and the cloud thereof be removed from the title. To this bill, Fretts, one of the plaintiffs here, appeared, demurred, and filed a cross-bill asking specific performance of the contract. On May 19, 1908, the circuit court of Monongalia county granted the relief to Tennant's heirs prayed for in their bill, and sustained a demurrer to the cross-bill of Fretts, and Fretts appealed. It is this appeal, determined by the Supreme Court of Appeals of the state, decided June 11, 1910, to which we have referred, supra. In the opinion the Supreme Court of Appeals, speaking through Williams, Judge, after quoting the terms of the contract as hereinbefore set forth, says:

"It is impossible to construe the agreement so as to give effect to all of its provisions. Some of them irreconcilably conflict with others. It first says, after reciting that $1 is to be paid at the signing of the agreement, that the balance is to be paid as Tennant may elect. Relying on this clause, counsel for appellant insists that Fretts was not bound to make any payment, or tender of payment, until Tennant should elect how much, and when, it should be paid. But it also contains the further provision that Tennant was to make deed upon 15 days' notice in writing by Fretts, or his assignee, and that deed was to be made whenever the unpaid purchase money was secured by bond with mortgage on the premises. A mortgage, of course, could not be executed until Fretts, who was to become the mortgagor, had obtained title, and title was not to be conveyed until after Fretts had given 15 days' notice to Tennant. No notice was ever given, and nothing was ever paid, except the $1. The foregoing provisions contradict each other, and both cannot be given effect. But the clause providing for a forfeiture of the contract in the event Fretts did not make the cash payment within 30 days from its date we think clearly indicates that the writing was considered by the parties as an option, and not as a sale, and that Fretts had 30 days in which to elect whether or not he would accept. It is true the writing does not specify the amount of the cash payment to be made in 30 days. The cash payment cannot refer to the $1, because that was expressly provided to be paid at the signing of the agreement. It must therefore necessarily refer either to a

certain portion of the purchase money, the amount of which was agreed on by the parties, but not expressed in writing, or it must refer to, and include, the whole purchase price. It is unnecessary for the purpose of this case for us to decide whether it referred to the whole, or only a part of the price, because it follows that the failure of Fretts to make a tender of it, whether it was all or a part, within the 30 days, rendered the contract void. If no certain amount in fact was agreed on to be paid within 30 days, Fretts should have elected to pay the whole purchase price, if he would avoid the effect of this forfeiture clause; and, not having done so, all his rights under the agreement ended. Courts of equity do not as a rule enforce a forfeiture, where there has been a vested right. But this rule does not apply to a case where the contract itself, under which the parties claim, contains an express provision forfeiting a right upon the happening of a certain contingency. Carney v. Barnes, 56 W. Va. 581, 49 S. E. 423.

"After this suit was brought, Allison assigned back to Fretts a one-half interest in the aforesaid agreement. Fretts appeared to the suit by counsel and demurred to the bill. Allison made no appearance. The demurrer was overruled, and Fretts filed an answer in the nature of a cross-bill, praying for specific execution of the contract. Plaintiff demurred to the cross-bill, and the court sustained it. This is right. It is evident that Fretts could not obtain relief without making Allison a party, even assuming that his cross-bill was meritorious. The cross-bill, on its face, showed that Fretts and Allison were jointly interested in whatever rights were conferred by the contract, and Allison should have joined in the application to the court for specific execution, or, if he refused to join, he should have been made party defendant. In a suit to enforce a contract, all persons interested in it should generally be made parties. Waterman on Specif. Perf. § 55; Wilcox v. Pratt, 125 N. Y. 688, 25 N. E. 1091; Woodward v. Clark, 15 Mich. 104. It was also proper to sustain the demurrer to the cross-bill, because its averments did not entitle defendant to any relief."

From this it clearly appears that the state court of last resort has determined that this contract must be construed to be an option and not an executory one for the sale of the coal. That being such option, the obligation was upon Fretts to comply with its conditions and to tender the purchase price or such part of it as had been agreed upon within 30 days, and, not having done so, the option became null and void. The conditions here are identical with those existing in the Tennant Case. This bill expressly charges that no part of the purchase price, save and except the $1 paid when the contract was signed, had ever been tendered or paid, because it is alleged the Shrivers "failed and refused to elect as to the time when the balance of said purchase money should be paid to them and the amounts of such payments." It cannot therefore be questioned that this decision in the Tennant Case establishes in the state of West Virginia "a rule governing the transfer and sale and affecting the title to and possession of property" as defined by Mr. Justice Miller in Bucher v. Cheshire R. Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795, which decision federal courts under ordinary circumstances ought to follow as held in many cases collated in Kuhn v. Fairmont Coal Co. (C. C.) 152 Fed. 1013. It is true that the federal courts are not absolutely bound to follow a single decision of the state court of last resort, especially when such state decision has been rendered since institution of suit in the federal court, as held by the Supreme Court in this same Kuhn Case in answering questions certified by the Circuit Court of Appeals to which the case had been appealed (215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. ——), but it is there distinctly held:

"Even in·questions in which the federal court exercises ·its own judgment, the federal court should, for the sake of comity and to avoid confusion, lean to agreement with the state court if the question is balanced· with doubt."

That the question here "is balanced with doubt" cannot be denied. The best evidence of this is the ability and sincerity with which able counsel have contended for different and antagonistic constructions of this contract. As Judge Williams justly says, "It is impossible to construe the agreement so as to give effect to all of its provisions." The fact, however, remains that the five judges of this state court of last resort have reached the unanimous conclusion that this contract was an option, and not one of absolute sale, and that a demurrer to a cross-bill containing substantially the same allegations and seeking the same relief as the bill here does was properly·sustained by the state circuit judge. I can see no reason why I should disagree with the judgment of these six learned judges and assert an independent judgment, calculated only to create confusion, inequality, and uncertainty as to property rights.

Let the demurrer be sustained, and, unless good cause be shown for amendment, the bill be dismissed, with costs.