HENRY O. HAVEMEYER, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82505.   Promulgated November 12, 1937.

*Henry B. Closson, Esq.*, and *William M. Sperry, 2nd, Esq.*, for the petitioner.

*W. H. Payne, Esq.*, for the respondent.

OPINION.

MELLOTT: The Commissioner determined a deficiency in petitioner's income tax for the year 1932 in the amount of $529.31. Petitioner apparently concedes that certain minor adjustments were properly made, but assigns as error the Commissioner's disallowance of $2,236.80 of $3,180.60 deducted by him in his return for said year as contributions.

The facts were stipulated, but at the hearing petitioner offered as exhibits the returns of the association hereinafter referred to for the years 1918 to 1932, inclusive, and such returns were received in evidence. The facts may be summarized for present purposes but the issue will be outlined first.

Petitioner contends that an association—The United Special Aid Association—organized in 1918 by him and members of his family, together with a close business associate, is a corporation, trust, fund or foundation, organized and operated exclusively for charitable purposes and hence that the contributions made by him to it during the taxable year are deductible under section 23 (n) of the Revenue Act of 1932, shown in the margin.[1]

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

*    *    *    *    *    *

(n) CHARITABLE AND OTHER CONTRIBUTIONS.—In the case of an individual, contributions or gifts made within the taxable year to or for the use of:

*    *    *    *    *    *

(2) a corporation, or trust, or community chest, fund or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

Respondent contends that the association, notwithstanding the statement of purposes or object contained in its constitution, was not a charitable organization within the purview of the above section, but a mere "novel scheme", adopted by petitioner to enable him to take a deduction which otherwise would be denied him. In this connection it is contended, in effect, that petitioner was enabled to make contributions to individuals and causes selected by him—largely superannuated servants—and to deduct the amount of such contributions, though a similar deduction is denied to other taxpayers equally generous. No charge of *mala fides* is made—in fact the respondent refers to the motives of petitioner largely as "praiseworthy"—but the question is simply whether the association is, or is not, a charitable trust, fund, or foundation.

The articles of association, signed by petitioner, his wife, several members of his family, and a business associate, provide that they, "in order to unify and coordinate" their charitable activities, organized "an association to be operated exclusively for charitable purposes." The constitution, incorporated in the articles, provides that the "Object" is as follows:

The purpose of this Association shall be to collect funds and therefrom to give relief to such indigent and deserving persons as the Board of Managers may from time to time consider to be in especial need of the bounty of the Association. No payment shall be made from the funds of the Association to or for the use of any officer, manager or member of the Association.

Theodore A. Havemeyer was president of the association, petitioner was vice president, McCafferty, the business associate, was secretary and treasurer, and they, together with Charlotte Havemeyer and Frederick C. Havemeyer constituted, and still constitute, the board of managers. The association maintained no independent offices, but such books and records as it had were kept at, and the meetings of the board of managers have been held in, the offices of Havemeyer & Elder, Inc. The officers of the association were also officers of Havemeyer & Elder, Inc. They, in the language of the stipulation, "invariably determined the amounts to be paid to the individuals given aid by the association."

The funds contributed to the association were deposited to its credit with the Chase National Bank from which payments were made by checks of the association, signed by its treasurer, to those designated to receive them by the board of managers. The association received contributions from the time of its formation in 1918 through the year 1931 in the aggregate amount of $47,975.87 and distributed during that period the total sum of $46,992.23.

During the taxable year 1932, the association received *contributions* from its members aggregating $3,618.85, $2,257.50 of which was con-

tributed by petitioner and the balance—except $150 which was contributed by a business associate—was contributed by members of his family, including nephews and nieces.

Paragraphs 10 to 13, inclusive, of the stipulation are as follows:

10. During said year the Association gave relief to the following persons considered by the Board of Managers of said Association to be indigent and deserving, in the following amounts:

| | | |
|---|---:|---:|
| E. J. Dukes—Direct | $120. 00 | |
| Dr. E. Y. Pennington | 169. 00 | |
| Lake Wales Hosp. Ass'n | 24. 00 | |
| " " Pharmacy | 17. 60 | |
| | | $330. 60 |
| S. G. Fletcher for H. Fletcher | | 150. 00 |
| William Grant | | 1, 200. 00 |
| James Hade | | 900. 00 |
| Eliza Jennings | | 60. 00 |
| E. S. Lambosia (Expenses for trip to Dr. Locke) | | 116. 00 |
| Carrie D. Meyer | | 600. 00 |
| Louis Platone | | 130. 00 |
| Lily Rhodes for A. Anderson | | 720. 00 |
| Check tax | | 0. 66 |
| | | $4, 207. 26 |

11. None of the above named individuals, who received assistance from this Association during the year 1932, is related to the petitioner or any member of said Association either by blood or marriage, nor is he or they under any legal or equitable obligation to contribute to the support of any one of them.

12. Before making contributions to the foregoing individuals said Association ascertained through its members or officers the following facts in respect to their circumstances:

(a) E. J. Dukes is a negro who was employed as a golf caddie at the Mountain Lake Club, Mountain Lake, Florida, and served the petitioner in that capacity at times when he was at that Club. During the winter of 1932 and for several years prior thereto petitioner spent considerable time at the foregoing club. In 1931, because of a malignant disease from which he was suffering, said Dukes became unable to perform the work to which he was accustomed, and was unable to secure any other employment which he might have been able to perform, due to the general financial condition which then existed throughout the country generally. By 1932 the disease had progressed to the point where Duke's eye-sight was materially impaired and hospitalization became necessary. These facts being brought to the attention of the Association by the petitioner, it concluded to assist him. In 1931, the Association contributed $90. toward the support of Dukes and in 1932, it contributed $120. In that year it also paid for his account $169. for medical services rendered to him, $24 for hospitalization and $17.60 for medical supplies for his use.

(b) William Grant was employed for 27 years prior to December 1, 1926, by the Havemeyer Real Estate Company, a New York corporation owning and operating certain real property, located in the City of New York, the stock of which was owned, ⅛th by the petitioner and the remainder by his brothers and sisters or the descendants of deceased brothers and sisters. On or about December 1, 1926, said Grant suffered a paralytic stroke and thereby became incapac-

itated from further work. He was at that time 67 years of age, married, and his wife was solely dependent upon him for support. Under those circumstances the association concluded to contribute $100. per month towards his support, which amount was continued through the year 1932.

(c) James Hade was employed from 1893 to 1929, by Mrs. Charlotte Havemeyer, wife of petitioner, as a groom and coachman. In 1929, by reason of a double rupture and the infirmities of old age, he became incapacitated for work. At that time he was about 68 years of age and married. His wife had been an invalid for many years and was solely dependent upon him for support. Upon these facts the Association concluded to contribute $75. per month towards his support and did so down through the year 1932.

(d) Eliza Jennings (colored) is the widow of a former colored employee of the late Theodore A. Havemeyer, father of petitioner who died in 1897. Her husband's father had been a slave of the Havemeyer family. She was a woman of great age and physical infirmity. She was mainly supported by her sons but she applied to the Association for assistance to pay rent for rooms at West Mahwah, N. J., and it was concluded to pay her $5. per month.

(e) E. S. Lambosia, in 1932, and for many years prior thereto was employed as a waiter in the Recess Club of New York City, of which Club the petitioner is a member. In 1932, because of the condition of his feet, said Lambosia became ill both physically and mentally, and stated that he intended to commit suicide. This coming to the attention of the petitioner he recommended to Lambosia that he consult Dr. M. W. Locke of Williamsburg, Canada, but said Lambosia stated he had a large family and did not have funds with which to make the trip. These facts being brought to the attention of said Association, it gave to Lambosia $116.00 necessary for him to make the trip.

(f) Carrie D. Meyer is the widow of William F. Meyer, who in his lifetime and for many years prior to his death was employed as a bookkeeper by said Havemeyer Real Estate Company. On his death in 1930 it was found that his widow was entirely unprovided for. Due to her age she could not be self supporting. These facts being brought to the attention of said Association, it contributed $50. per month towards her support.

(g) Louis Platone was in 1932 an independent taxi driver in the City of New York who had from time to time been engaged by the petitioner and various members of his family. In that year, due to ill-health and to the general financial stress of the people generally, Platone was unable to meet certain payments required in his business. These facts coming to the knowledge of the Association through the petitioner, it contributed to him the sum of $130.00.

(h) A. Anderson was employed as a gardener by the petitioner for more than 30 years. In 1932, due to the infirmities of age, his mind became unbalanced and it was necessary that he have constant care and attention. This duty was undertaken by his daughter Lily Rhodes, but she required financial assistance, and this was furnished by said Association to the extent of $60. per month.

(i) H. Fletcher was employed as a watchman by the Brooklyn Eastern District Terminal (a wholly owned subsidiary corporation to Havemeyer & Elder, Inc.) from November, 1928 to June, 1932, when due to tuberculosis he became incapacitated for work. He was married and had two children who were dependent upon him. He received some assistance from relatives, but it was insufficient for his care and support. These facts being brought to the attention of the Association it contributed $150 per year in monthly installments, toward his support. These payments were made to his wife.

13. The payments made by the Association to or for the benefit of the following individuals during the year 1932, were at the request and upon the recommendation of petitioner, Henry O. Havemeyer:

| | |
|---|---|
| E. J. Dukes | $330.60 |
| Eliza Jennings | 60.00 |
| E. S. Lambosia | 116.00 |
| Louis Platone | 130.00 |
| Lily Rhodes for A. Anderson | 720.00 |
| TOTAL | $1,356.60 |

The payment of $900.00 by the Association to James Hade during the year 1932 was upon the request of Mrs. Charlotte Havemeyer, wife of petitioner.

The returns of the association show that several individuals have received substantial sums from it during the different years. Thus, during the years 1918 to 1926 W. T. Miller received $15,696.91—an average of $1,744 per year. In 1927 and 1928 the association paid to or for him the additional sum of $1,668.02, which included funeral expenses and medical attention making in all $17,364.93. During the years 1918 to 1929 it paid to or for the benefit of Sarah O'Byrne $6,068. During the years 1927 to 1931 it paid to Florence Bone $1,985 and from 1929 to 1932 it paid Wm. Grant $4,200 and James Hade $3,900. The stipulation shows why the payments were made to Grant and Hade, but the record is silent as to why they were made to the others. The payments made by the association as shown in paragraph 10 of the stipulation, *supra*, are typical, both in the number of persons receiving them and in the aggregate amounts paid during each year of its existence.

So much for the facts, which, though possibly set out in unnecessary detail, serve as a background for considering the contentions of the respective parties. Quoting from *Helvering* v. *Bliss*, 293 U. S. 144, petitioner says that since the exemption of income devoted to charity was begotten from motives of public policy, the statute allowing it should be liberally construed. Granted; but petitioner "must bring himself strictly within its terms", *Fred Dohrmann, Jr.*, 18 B. T. A. 66, 69, and "show that the recipient of his contribution is both organized and operated exclusively for the purposes specified by the statute." *Fremont C. Peck*, 34 B. T. A. 402, 404 (on appeal to the Second Circuit). If he does so he is entitled to the deduction from gross income; otherwise, the deduction must be disallowed.

Many contributions, though made from the highest and most praiseworthy motives, are not deductible from income. Thus, under the revenue acts prior to 1935, contributions made by corporations, though for purely charitable purposes, were not deductible. *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289. A contribution made by a taxpayer to his partially dependent mother has

been held to be not deductible, *J. D. Bowles*, 1 B. T. A. 584, as also contributions to cemetery associations, *Schuster* v. *Nichols*, 20 Fed. (2d) 179; *George L. Craig*, 11 B. T. A. 193, and contributions to the civic club of a city, whose activities are recreational. *Joseph M. Price*, 12 B. T. A. 1186. If petitioner and his wife had contributed directly to the support of their former servants, the amounts so contributed would not have been deductible. Are the amounts which they contributed to the association, most of which was used for such purpose, deductible? The answer to this question depends upon the character of the association itself; for "the statute requires that such contributions be made to some form of organized charity." *Fred Dohrmann, Jr., supra.*

No hard and fast rule can or should be laid down for determining whether a corporation, fund, trust, or foundation has been organized and is being operated exclusively for charitable purposes. Each case must be decided upon its own facts. But we may look to established law to determine the meaning of "charitable." *Pennsylvania Co. for Insurance on Lives, etc.* v. *Helvering*, 66 Fed. (2d) 284.

In one of the cases chiefly relied upon by petitioner—*Bok* v. *McCaughn*, 42 Fed. (2d) 616—the court intimates that one of the tests which may be applied is whether the activity engaged in by the corporation is one "for the promotion of which a charitable trust might be created." If such a test be applied then the inquiry should be whether the elements of a charitable trust are present. In vol. II, Restatement of the Law of Trusts, sec. 368, it is said: "The common element of all charitable purposes is that they are designed to accomplish objects which are beneficial to the community." "Charity is generally defined as a gift for public use" (*Kain* v. *Gibboney*, 101 U. S. 362, 365), or "for the benefit of an indefinite number of persons" (*Jackson* v. *Phillips*, 14 Allen (Mass.), 556); but it seems to be essential that "some public benefit be derived." Cf. *Pennsylvania Co. for Insurance on Lives, etc.* v. *Helvering, supra,* and cases cited; *Perin* v. *Carey*, 24 How. 465, 506 (65 U. S. 465); *In re DeLong's Estate*, 250 N. Y. S. 504.

While it is debatable whether the word "charitable" as used in the revenue acts *supra* has the same shade of meaning that it has when used in connection with trusts, that question need not be decided. Examining the articles of the association it appears that it was organized "to unify and coordinate the charitable activities" of its organizers. What were the "charitable activities" which were to be unified and coordinated? Apparently contributions to superannuated or disabled employees or former servants of the organizers or dependents of such. Two in this category—Grant and Hade—received during the taxable year approximately the same amount from the association that this petitioner contributed to it. All of the others who received aid during the year were likewise individuals,

or the dependents of individuals, who had rendered services in some form or other to petitioner, members of his family, or corporations in which he and the members of his family owned most of the stock. Apparently the same thing was true for prior years, though the evidence is not sufficient to justify us in making any such finding. However, the returns of the association for such prior years show that aid was rendered to only a few individuals in each year, and generally in very substantial amounts.

The evidence, we think, indicates very clearly that the purpose of the association was "to confer a private benefit" on persons in whom petitioner and the members of his family were interested and that neither the public nor the community in general were interested therein, either as members, contributors, or beneficiaries. Cf. *In re Westinghouse Estate*, 281 N. Y. S. 633; *Proctor Patterson et al., Executors*, 34 B. T. A. 689. The rule enunciated by the Board in *Henry C. DuBois*, 31 B. T. A. 239, seems to be applicable. Therein it was said, under facts quite similar to those before us, that "If the corporation was operated even partly for purposes that were private or personal to the petitioner the contributions are not deductible. Charitable contributions to be deductible must be for public, as opposed to private, charity, i. e., 'free from stain or taint of every consideration that is personal, private or selfish.'" The same thought was expressed by the court in *Smith* v. *Havens Relief Fund Society*, 90 N. Y. S. 168; affd., 118 App. Div. 678, whose language we paraphrase: The use should be public and the benefit should be intended, not for individuals as such, but as representatives of a class. The announcement of an altruistic aim may not be a cover for the bestowal of a private bounty.

Consideration has also been given to G. C. M. 19028, Internal Revenue Bulletin XVI–40–8951, holding that an employee's organization engaged in administering a fund consisting of amounts contributed by the employees and the employer or others, which fund is to be applied in the discretion of the administrator of the fund to the financial relief of the employees or their families, is a charitable organization within the meaning of the section under consideration, and to *Harrison* v. *Barker Annuity Fund*, 90 Fed. (2d) 286. However, the Board is of the opinion that the association in the instant proceeding can not be classified as a "charitable * * * corporation * * * trust * * * chest * * * fund or foundation" within the purview of the section of the revenue act under consideration. It follows that the contributions made by petitioner to the association in the taxable year are not deductible from his gross income and that the respondent did not err in determining the above deficiency.

Reviewed by the Board.

*Judgment will be entered for the respondent.*